See Alexander's Cotton, 2 Wall. [69 U. S.] 404.

## Case No. 12,916.

### SIX HUNDRED AND FIFTY-ONE CHESTS OF TEA v. UNITED STATES.

[1 Paine, 499.] [1]

Circuit Court, S. D. New York. April Term, 1826.

CUSTOMS DUTIES—FORFEITURE—INTENT OF ACT—MARKS AND CERTIFICATES.

1. The spirit of the revenue laws is, not to create a forfeiture of property, except for acts of the owner attended with fraud, misconduct, or negligence.

[Cited in The Waterloo. Case No. 17,257; U. S. v. Curtis, 16 Fed. 189; Cargo ex Lady Essex, 39 Fed. 767.]

2. He is not to suffer for the fraud, misconduct, or negligence of the revenue officers, in which he does not participate.

[Cited in U. S. v. The Sarah B. Harris, Case No. 16,223.]

3. Spirits, wines, and teas are not subject to seizure, under the 43d section of the collection law [of 1799 (1 Stat. 660)], which declares, that "if any chest, &c. shall be found in the possession of any person, unaccompanied with such marks and certificates, it shall be presumptive evidence that the same is liable to forfeiture," unless the certificates and marks are both wanting.

4. "Possession of any person," as used in this section, means the possession of the purchaser, to whom the certificates are required to be delivered on a sale, and not the possession of a wrong doer

5. The collection law is adapted to a regular and usual course of business, and extraordinary cases where a compliance with its letter is impracticable, do not come within its sense and meaning.

6. The information alleged, that the teas were unaccompanied by marks and certificates; but the proof was, that the certificates only were wanting: *Held*, that the averment was unsupported by proof.

7. And the necessity of this allegation shows, that the true construction of the act is, that both must be wanting.

8. The want of marks and certificates, and not the illegal importation or non-payment of duties, is the specific cause of forfeiture under this section.

9. And this is evident, from its not being necessary to allege in the information, that the teas were illegally imported, or the duties unpaid, but only that they were unaccompanied with marks and certificates.

10. So of the other provisions of the act; their object is to guard against illegal importation and the non-payment of duties; but the forfeiture which they create is incurred only by a violation of the special regulations which the law has provided as guards and checks.

11. The marks and certificates, being evidence only of a lawful importation, the want of them

[1] [Reported by Elijah Paine, Jr., Esq.]

affords no presumption of the non-payment of duties.

12. Impolicy of allowing a forfeiture where it is to be the consequence of the fraud or negligence of such revenue officers, as might entitle themselves to a share of it.

13. The general bond of the importer for duties on teas, accompanied with a deposite of the teas, as provided for by the 62d section of the collection law, is a securing of the duties, within the meaning and true interpretation of the 43d section.

14. And if this were not such a securing of the duties, the teas could not have been landed.

15. A deposite, in all cases under this act, is in effect a pledge, and in lieu of the personal sureties dispensed with, unless specially declared to be otherwise.

16. Whether, if government regain the possession of teas, irregularly obtained from their keeping without the payment of duties, they can enforce their lien for the duties, or how long such lien continues after the teas have gone into circulation in the market? Quere.

17. A forfeiture for the embezzlement of wines, &c. under the 5th section of the act of April 20, 1818 [3 Stat. 470], is incurred only by the act of the owner, and not of a mere stranger, or the inspectors of the revenue. But the provisions of this act have no application to a case arising under the 43d section of the collection law.

Error to the district court of the United States for the Southern district of New-York.

This was an information, under the 43d section of the collection law, against 651 chests hyson skin tea, for being found unaccompanied with the marks and certificates required by law. At the trial in the court below, the jury found a special verdict, upon which judgment of condemnation was entered [case unreported], and a writ of error brought for its reversal. The information alleged, that the teas in question were, on the 1st day of July, 1825, imported from China, in the ship Benjamin Rush, at Philadelphia, and were unladen without having been entered and without any permit, and that the duties had not been paid or secured to be paid. That the said teas, being subject to the payment of duties, were found concealed in a store in Pearl-street, New-York, unaccompanied with the marks and certificates prescribed by law, the duties not having been paid or secured to be paid. That the said teas were found in a store in Pearl-street, in the possession of Smith and Nicoll, unaccompanied by such marks and certificates as are prescribed by law, the duties not having been paid or secured to be paid.

The claim of Joshua Lippincott, William Lippincott, and Benjamin W. Richards, set forth, that they were merchants of Philadelphia, in the auction and commission business, and that the teas in question were their property: that said teas were imported at the time and place stated in the information by Edward Thompson, in his ship the Benjamin Rush, and were duly entered and permits obtained to land the same, and were thereupon duly landed and inspected, weighed, marked, and numbered by the proper officers: that said Thompson gave his bond to the collector for double the amount of duties due upon the teas, conditioned for the payment of the duties in two years thereafter; and the said teas were thereupon, by an agreement with the collector, at the risk of Thompson, deposited and stored in a custom-house store, upon which were affixed two locks, the key of one of which was given to Thompson, and of the other was taken by the inspector; and that all the before-mentioned acts were done as the law directs; and as evidence that the teas were lawfully imported, a certificate, in due form of law and duly signed and sealed, was then issued to accompany each of said chests of tea, and delivered to Thompson; which certificates afterwards came into the hands of the claimants, and are now held by them: that the claimants being in the practice of making advances on teas received by them for sale, the teas being a pledge for their reimbursement, Thompson, on the 12th of July, 1825, applied to them, and proposed to transfer a large lot of teas, to be sold by them, among which were those in question, on their making him an advance; and that they accordingly advanced to him 100,000 dollars, and soon after other large sums. The claim then set forth the instrument by which said teas were conveyed to the claimants, from which it appeared, that 17,274 packages of tea were assigned as collateral security for certain notes granted and to be granted by the claimants to Thompson, with power to enter the same from custom-house stores, and to secure the duties thereon, should it be deemed necessary. The claim further stated, that Thompson at the same time endorsed and delivered to the claimants the bills of lading and invoice of said teas, and also delivered to them his key of the custom-house store, containing said teas, among which were the teas in question: that the claimants having long dealt with Thompson, in selling teas for him at public and private sale, and knowing the manner in which he had bonded and stored the teas in question, and that they could not be delivered from the store until the duties had been paid or secured to be paid, and that a permit must be obtained for the delivery of the same, they occasionally delivered to Thompson their key, that he might deliver the teas to purchasers, believing, as the officers had the other key, no teas would be delivered improperly. That on the 5th of November, 1825, Thompson applied to them, informing them, that he was about selling the 651 chests of tea to Smith and Nicoll, for which they were to give their notes, and which he would give to the claimants in part payment of their said advances; and that they thereupon delivered Thompson the key to obtain the teas. That Smith and Nicoll knew of the claimants' property in the teas, and understood that the notes were to be paid to them; but that after the arrival of the teas in New-York, they called on Smith and Nicoll, and demanded the teas, or that they should pay for them; the claimants not

then suspecting that they had been improperly obtained from the public stores. The claim also stated, that the teas were shipped from Philadelphia to New-York, and entered and cleared at those ports by the custom-house.

The special verdict found, that the teas were imported, entered, landed, and inspected according to law, and as set forth in said claim and answer. That the duties imposed by law on the said teas, on being so imported, have not been paid; but that the same had been secured to be paid in no other way than by said Thompson's general bond, and by storing said teas as provided by law, and in manner set forth in the answer and claim. That at the time said teas were found in said store, the certificates provided by law to accompany each chest did not accompany each chest of said tea; but that each chest of tea was duly marked, and then bore all the marks on each chest which the law requires; and that the certificates were, at the time when said teas were found in Philadelphia, in the hands of the claimants, as set forth in the claim. That said teas were not concealed in manner and form as is set forth in said information. That the claimants, until after the teas were found in said store in New-York, were wholly ignorant of the manner in which they had been obtained from the store in Philadelphia without paying the duties due thereon, or giving further bond to secure the same. And that said teas were transported to the city of New-York, in manner set forth in the claim.

D. B. Ogden and S. P. Staples, for plaintiffs.

R. Tillotson, Dist. Atty., for defendants.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court of the Southern district of New-York. The seizure of the teas having been made upon land, the information was filed in that court, as a court of common law, and the cause tried by a jury, and a special verdict found, which ascertains and settles all matters of fact in the cause.

The information sets out that the teas were imported into the United States in July, 1825, from Canton, in the ship Benjamin Rush, and were subject to the payment of duties; and then alleges the following grounds upon which the forfeiture is claimed: 1st. That the teas were unladen and delivered from the ship or vessel in which they had been imported at Philadelphia, without having been entered at any custom-house or in the office of any collector of the customs in the United States, and without any permit from any collector and naval officer; and that the duties imposed by law on the said teas had not been paid or secured to be paid to the United States. 2d. That the teas so imported ought, according to the provisions of the act in such cases made and provided, to have

been marked, and accompanied with the certificates required by the act; and were found concealed in a store in Pearl-street, in the city of New-York, in the possession of some person unknown to the district attorney, unaccompanied by the marks and certificates prescribed by law, and that the duties had not been paid or secured to be paid. 3d. That the said teas, so imported, &c. ought to have been marked, and accompanied with certificates, as required by the act in such cases made and provided; and were found in a store in Pearl-street, in the city of New-York, in the possession of Smith and Nicholl, unaccompanied by such marks and certificates as are prescribed by law, on which said teas the duties had not been paid or secured to be paid. To this information, Lippincott and Co. interpose their claim and answer, setting out particularly and circumstantially the importation of the teas by Edward Thompson; that they were duly entered at the custom-house in Philadelphia, and unladen and landed in the presence of a custom-house officer, under a permit from the collector, and each chest duly inspected, weighed, marked, and numbered, and a certificate issued accompanying each chest, as by law required: That Thompson, the importer, gave his bond for the duties: That the teas were deposited in store according to the provisions of the 62d section of the collection law of 2d March, 1799 (3 Laws [Bior. & D.] 193 [1 Stat. 673]), and then setting out the purchase and transfer of the teas to the claimants, and denying all knowledge of the teas having been illegally or in any improper manner taken from the stores where they were deposited. And traversing the allegations in the information; that the teas were unladen, and delivered, without having been duly entered, or without a permit, or without the duties having been paid or secured to be paid, or that the teas were concealed, unaccompanied with the marks and certificates prescribed by law. The special verdict finds, that the teas were imported, entered, landed, and inspected according to law, and as set forth in the claim and answer. That the duties imposed by law on the teas, had not been paid, nor secured to be paid in any other manner, than by said Thompson's general bond, and by storing said teas as provided by law, and in the manner set forth in the claim and answer. That when the teas were found in New-York, the certificates provided by law to accompany each chest, did not accompany them, but were in Philadelphia, in the hands of the claimants; but that each chest bore all the marks required by law, and as set forth in the claim. That the teas were not concealed as set forth in the information. That the claimants, until after the teas were found in New-York, were wholly ignorant of the manner in which the same had been obtained from the store in Philadelphia, without paying the duties thereon, or giving further bond to secure the same. And that the teas were

transported to the city of New-York, in the manner set forth in the claim.

In examining the questions which are presented by this case, it is to be borne in mind, that it is a proceeding against these teas as forfeited to the United States, by reason of an alleged violation of some part of our revenue laws; and not to regain the possession of the property, of which the United States may have been wrongfully or fraudulently deprived, so as to enable them to enforce payment of the duties for which there may be a lien. And it is a proceeding to enforce their forfeiture against innocent bona fide purchasers of the property, who are not chargeable with the least misconduct or even negligence, by which the government lost the possession it once had of the teas. The manner in which or the means by which that possession has been lost, are not particularly disclosed by the record. But enough is shown to warrant the conclusion, that it must have been effected by the misconduct or negligence of some of the custom-house officers at Philadelphia and some other persons, for neither of whom however can the claimants be held responsible, or be in any manner implicated by their acts. If under such circumstances, the teas in question have become forfeited, it ought to be the result of some plain and positive provision of law. Whilst on the one hand, security to the revenue of the country may require rigid laws to guard against frauds, yet on the other, the rights of the innocent ought to be protected, and care should be taken not so to shackle trade and commerce, as to check the industry and enterprise of the merchant, and render hazardous to the whole community the purchase of articles which may have been subject to the payment of duties. I am not aware of a single instance where by any positive provision in the revenue laws, a forfeiture is incurred, that it does not grow out of some fraud, misconduct, or negligence of the party on whom the penalty is visited. In the case of U. S. v. Cargo of The Favourite (4 Cranch [8 U. S.] 365), to which I shall have occasion hereafter more particularly to refer, the supreme court of the United States, in speaking of the provisions in the collection law of 1799, relative to forfeitures, say, "that the law is not understood to forfeit the property of owners or consignees, on account of the misconduct of mere strangers, over whom such owners or consignees could have no control." And if not on account of the misconduct of strangers, much less justice would there be, in making the misconduct of the custom-house officers, who are the agents of the government, draw after it such a penalty upon the innocent owner.

With these preliminary observations, I shall proceed to a more particular examination of the several grounds upon which the forfeiture of these teas is attempted to be sustained, and which may be done under the following heads: 1st. That certificates did not accom-

pany each chest of tea. when found in New-York. 2. Whether, by the general bond of Edward Thompson the importer, and the deposite of the teas in store, according to the provisions of the 62d section of the collection act of 1799, the duties were secured within the meaning, and true interpretation of the 43d section of the same act.

By this law, from the 37th to the 43d sections inclusive, various provisions are made with respect to the entry, and landing of distilled spirits, wines, and teas; and among other things, it is required, that the officers of inspection, at the port where the same shall be landed, shall, upon the landing thereof, mark in durable characters, the several casks, chests, vessels, and cases containing the same, showing the quantity and quality of each; the port of importation, the name of the vessel. the surname of the master. the date of the importation, and the name of the surveyor or chief officer of inspection for the port. The special verdict finds that all this was done, with respect to the teas in question, and that such marks were upon each chest when they were seized. The surveyor or chief officer of inspection, within the port or district in which the spirits, wines, and teas. shall be landed, is required to give to the proprietor, importer, and consignee, or his agent, a general certificate. which he is to retain, showing the whole quantity so imported; and the name of the proprietor, importer, consignee, or agent, and of the vessel from on board which the spirits, wines, or teas, shall have been landed, and the marks of each cask, chest, vessel, or case, containing the same. In addition to this general certificate, the surveyor or chief officer of inspection is required to give a special certificate, which shall accompany each cask, chest, &c., wherever the same may be sent within the limits of the United States, as evidence that the same may have been lawfully imported. It is the latter certificate, that the special verdict finds did not accompany each chest of tea, when found in New-York. The certificates, however, were duly issued by the surveyor, and were in the possession of the claimants in Philadelphia, when the seizure was made. Then comes the 43d section under which the forfeiture is claimed, which declares that the proprietor, importer, or consignee, or his agent, who may receive said certificates, shall upon the sale or delivery of any of the said spirits, wines, or teas, deliver to the purchaser thereof, the certificate that ought to accompany the same. on pain of forfeiting the sum of fifty dollars for each cask, chest, &c., with which such certificate. shall not be delivered. And if any cask, chest, vessel, or case, which by the foregoing provision ought to be marked, and accompanied with certificates, shall be found in the possession of any person, unaccompanied with such marks and certificates, it shall be presumptive evidence that the same

is liable to forfeiture; and it shall be lawful for any officer of the customs or of inspection to seize them as forfeited.

The form of this special certificate is given in the act, and contains substantially no more than the law requires to be expressed by the marks on each cask, chest, vessel, or case, and it is to accompany each cask, chest, &c. as evidence that the same has been lawfully imported. It is by no means however to be inferred, that this is the only document or evidence to be received and looked to, showing a lawful importation. It is one of the checks which the law has provided, to guard against illegal importations. The marks are for the same purpose, and of at least equal if not of more importance. They are required to be made in durable characters on each cask or chest, &c. and must of course accompany it wherever it goes. The certificate, from the very nature of the document, cannot always accompany the cask or chest. It is not required to be nailed to it; and the act only requires that upon the sale or delivery of the teas, &c., the certificate shall be delivered to the purchaser. And when it speaks of the cask or chest being found in possession of any person unaccompanied by this evidence, it must be intended to refer to the person who has possession as purchaser. And to authorize the seizure, the cask or chest must be unaccompanied with such marks and certificates. The absence of both are necessary. This is not only made so by the letter of the act, but is what may reasonably and fairly be presumed to have been the intention of the legislature. And when the law has declared that two concurring circumstances shall authorize an act, and produce a certain effect, it is going great lengths in the construction of a statute so highly penal as this, to say, that one or the other circumstance shall produce the same effect, and that both need not concur. It was the want of the certificates only upon which the seizure was made, and if the condemnation is to be sustained, it must be upon this alone, for the chests were all duly marked as by law required. The reasonableness and necessity of requiring the want of both marks and certificates, to warrant a seizure and condemnation, may be illustrated and enforced by a hypothetical case. Suppose a chest of tea sold in the usual course of business, and the certificate delivered as the law requires to the purchaser, and the tea sent by a cartman to the place where it was to be used or retailed, unaccompanied by the certificate; would a custom-house officer be authorized to seize this chest of tea, and would condemnation follow thereupon? I presume no one would contend for such a construction of the act; and yet, would it be more extravagant than a construction must be which sustains the forfeiture in the present case? The claimants, as owners of the teas, were entitled to the possession of the certificates, and in fact

bound to have them, as one of the vouchers of their title; and not having sold the teas, there was no purchaser to whom the certificates could be delivered as the law requires. It is upon the sale or delivery of the tea, that the law requires the certificates to be delivered over to the purchaser. And if the owner is wrongfully or fraudulently deprived of the possession of his teas, it would involve a great absurdity to say, he is bound under the penalty of forfeiting his property to hand over the certificates to the wrong doer.

Have the claimants incurred the penalty of fifty dollars for each chest which the law imposes upon the proprietor for not delivering the certificates to the purchaser upon the sale of the teas? Certainly not. It would seem to me that the claimants might with equal justice be subjected to a forfeiture of their property, if it had been stolen and afterwards found in the possession of some person unaccompanied with the certificates. But these, and the like extraordinary cases, do not come within the sense and meaning of the law, which is adapted to a regular and usual course of business, and where it is in the power of a party to comply with the requirements of the law; and not to cases where from the nature of things, a compliance with the letter of the law is impracticable. The want of the certificates was open to explanation, and was satisfactorily accounted for. In the case of Cargo of The Favourite, 4 Cranch [8 U. S.] 363, the court say, "It is unquestionably a correct legal principle, that a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." To apply this principle to the present case; the claimants were ignorant of the fact that these teas had been illegally taken from the stores in Philadelphia: nor is it pretended that this was done by any one for whom they are responsible. What means then were in their power to guard against the forfeiture now claimed? These considerations show the propriety of requiring, that in order to make out a prima facie case of seizure and forfeiture, the teas should have been unaccompanied with both marks and certificates. But this will appear in a still more obvious point of light, by an inquiry as to the necessary allegations in the information. Would it have been sufficient to have alleged that the teas were found in the possession of Smith and Nicoll, unaccompanied with the certificates only? I think it would not. And such must have been the understanding of the district attorney in framing this information, otherwise he would not have alleged the want of both marks and certificates, in the language of the act, as it must have been known that the proof would not sustain such an allegation. The want of marks is certainly not an immaterial allegation, and having been

made, it was necessary to be proved. The reverse of which, however, is found by the special verdict, which establishes the fact, that each chest when found bore all the marks which the law requires. The proof, therefore, did not support the allegation (and as I think a necessary allegation,) in the information.

But it is said the want of marks and certificates is not the ground of forfeiture, but only authorizes the seizure; but that the condemnation is for illegal importation and non-payment of duties. This I apprehend is not a correct view of the 43d section of the act; nor is it the construction assumed in the information. The want of marks and certificates, is alleged as the substantive ground of forfeiture. The marks and certificates have no connexion whatever with the payment of duties. They relate altogether to the importation. With respect to the certificates, the 41st section of the act expressly declares that it is to accompany each chest, as evidence that the same has been lawfully imported, and the marking is by the officers of inspection, who are under the superintendence of the surveyor, under whose direction the teas are to be landed; the duties, however, or security for the same, are received by the collector. The existence of marks and certificates being no evidence of the payment of duties, the want of them can afford no presumption of the non-payment. And if the want of the certificates in the present case, was presumptive evidence of illegal importation, that presumption is rebutted by the special verdict, which finds expressly, that the teas were legally imported. The condemnation, therefore, cannot be sustained on any presumption of illegal importation. And if the certificate has no connexion with the payment of duties, the want of it, as has been already observed, affords no presumption of non-payment. But let us look a little more particularly into the provisions of this 43d section, and see whether the want of marks and certificates is not the substantive ground of forfeiture. And one of the surest tests by which to ascertain this, is, to see what allegations the information must contain. And I think it very clear, that it is not necessary to allege any thing more than that the teas were found in the possession of some person unaccompanied with marks and certificates. This the act declares shall be presumptive evidence that the teas are liable to forfeiture, and may be seized as forfeited. The act does not declare that the want of marks and certificates shall be presumptive evidence of illegal importation, or the non-payment of duties, which it would undoubtedly have done if this was made the substantive ground of forfeiture under this section. The ultimate object of the provision undoubtedly is, to guard against illegal importations, and compel the introduction of goods through the regular channel provided by law. But the act makes the want of marks and certificates prima facie, sufficient to sustain the forfeiture. The information need not allege an illegal importation, or the non-payment of duties. The act makes it matter of defence to show that the teas were legally imported, and the duties paid or secured; and it is never necessary to state in a libel any fact which constitutes the defence of the claimants, or a ground of exception to the operation of the law on which it is founded. This has been expressly so laid down by the supreme court of the United States. [The Aurora v. The United States] 7 Cranch [11 U. S.] 382.

If the information then need only allege that the teas were found unaccompanied with marks and certificates, no more need be proved prima facie to warrant a condemnation; and unless the claimant should set up as matter of defence, evidence in relation to the importation or payment of duties, the only ground of condemnation would of course be the want of marks and certificates; and for this the act declares the teas shall be adjudged to be forfeited, unless the claimant, upon the trial, shall prove the same to have been imported according to law, and the duties paid or secured. So with respect to all the other provisions in the act, where the penalty of forfeiture is inflicted, they may be considered as having for their object, to guard against illegal importations, and to secure the payment of duties; yet it cannot with propriety be said that the illegal importation or non-payment of duties is the ground of forfeiture. This is incurred by a violation of the special regulations which the law has provided as guards and checks. Thus to unlade goods before the vessel comes to the proper place for the discharge of the cargo, or without authority from the proper officer, subjects them to forfeiture; but it is enough to allege and prove the simple facts of the unlading at an improper place, or without a permit, without alleging or proving that the importation was illegal or the duties not paid (27th section). So under the 37th and 38th sections of the act, spirits, wines, and teas are required to be landed, under a special permit endorsed, as therein prescribed, and under the inspection of the surveyor or other officer acting as inspector of the revenue, on pain of forfeiture. In these and many other cases that might be referred to, it is the violation of the special regulation that is made the ground of forfeiture. In the same manner as the want of marks and certificates is the ground of forfeiture under the 43d section.

I am persuaded that under the extraordinary circumstances of this case, the single fact, that the teas were unaccompanied by the certificates, when found in New York, is not sufficient to sustain the condemnation. It is neither within the letter

nor spirit of the act; and it cannot be supported under any rule of construction applicable to penal statutes. The case of U. S. v. Cargo of The Favourite [supra], already referred to, contains principles and rules of construction which have a very strong bearing upon the present case. The goods libelled in that case consisted of wines, spirits, and other articles, saved from a wreck, and landed not in conformity to the regulations of the law with respect to such articles. The libel alleged as grounds of forfeiture: 1. That the wines and spirits were unaccompanied with the marks and certificates required by law; and 2dly. That they were removed without the consent of the collector, before the quantity and quality of the wines and spirits had been ascertained according to law. The facts alleged in the libel as the grounds of forfeiture were not controverted. There was, therefore, clearly a forfeiture according to the letter of the law. And it was urged upon the court that the remission or mitigation of the forfeiture could only be exercised by the secretary of the treasury. One count in the libel in that case was under the 43d section of the act, like the present, and the want of marks and certificates alleged as the ground of forfeiture. And the court said the legislature, by the provisions referred to, did not intend to comprehend wrecked goods, or goods found under like circumstances. And this opinion of the intention of the legislature, was formed not exclusively upon the extreme severity of such a regulation, but also on what is deemed a fair construction of the language of the several sections of the act, which seems not adapted to such cases. And with respect to the other ground alleged as sustaining the forfeiture, the court said the removal for which the act punishes the owner with a forfeiture of his goods, must be made with his consent or connivance, or with that of some person employed or trusted by him. If by private theft or open robbery, without any fault on his part, his property should be invaded while in the custody of the officers of the revenue, the law cannot be understood to punish him with a forfeiture of that property. The acts being done with no view to defraud the revenue, the court would not be inclined to put a strained construction on the act of congress in order to create a forfeiture. May it not with equal force and propriety be said, that the legislature never intended to apply the penalty of forfeiture to goods found under circumstances like the present? And indeed this is a stronger case; for it does not come within the letter of the act. The marks did accompany the teas. The certificates only were wanting; and they wanting under circumstances satisfactorily showing that no fault or negligence was imputable to the owners, any more than if the teas had been stolen from the stores in Philadelphia. And the principles laid down by the court in the case referred to, apply with peculiar force—"That a forfeiture can only be applied to those cases in which the means prescribed for the prevention of a forfeiture may be employed; and that the law is not understood to forfeit the property of owners, on account of the misconduct of mere strangers, over whom such owners could have no control." I abstain from any remarks in relation to the conduct of the officers of inspection, who had charge of the storehouse in Philadelphia in which the teas were deposited, except barely to observe, that the teas could not have been removed without fraud or gross negligence in them; and it would be dangerous, and a violation of all sound principles, to admit a construction of the law, which, in its consequences, might reward such misconduct with a portion of the forfeiture. For if these teas are forfeited, they would have been equally liable to forfeiture, if they had been seized by a custom-house officer in Philadelphia whilst on their way from the store to the vessel in which they were transported to this city.

So far as the forfeiture may be claimed on the allegation of concealment, it is sufficient to say, the fact is expressly disproved by the special verdict. There was not, therefore, made out, on the part of the United States, the presumptive evidence which the 43d section of the act declares shall render the property liable to forfeiture. And the claimants were under no necessity of proving that the teas were imported into the United States according to law, and the duties paid or secured.

2. This would supersede the necessity of examining the second point that has been made in this cause. But as the question has been fully argued, it may not be amiss for me briefly to state the view I have taken of it. The special verdict puts at rest all questions that could arise respecting the legality of importation: And under this branch of the case, the only inquiry is, whether by the general bond (as it is called) of the importer, and the deposite of the teas as required by law, in such cases, the duties were secured within the meaning and true interpretation of the 62d section of the act. If we look at this question upon general principles, and judge of it according to the common or legal understanding of such a transaction, independent of any statutory provision, no doubt could arise. To say that a bond, fixing the amount of a debt, and limiting the time of payment, accompanied with a deposite of goods to double the amount in value, to be held as a pledge, with authority to sell the same at the expiration of the time limited for payment, and out of the proceeds to pay the debt, is not a security for such debt, would be considered an extraordinary proposition, and could not be sanctioned. If so, is there any thing either in the letter or in the spirit and policy of the collection law, calling for the application of other and

different principles? This 62d section of the act declares, that, with respect to teas imported from China or Europe, it shall be at the option of the importer to be determined at the time of making the entry, either to secure the duties thereon, on the same terms and stipulations as on other goods, &c. or to give his own bond in double the amount of the duties, with a condition for the payment of the duties in two years from the date of the bond, which the collector is directed to accept without surety, (that is to say, personal surety,) upon the terms particularly specified in the act: Which are substantially, that the teas shall be deposited at the expense of the importer in a storehouse, to be agreed upon between the importer and inspector of the revenue, upon which storehouse the inspector is required to affix two locks, the key of one to be kept by the importer, and the key of the other by the inspector, who shall attend, at all reasonable times, for the purpose of delivering the teas out of the storehouse. But no delivery is to be made without a permit in writing from the collector and naval officer. And to obtain such permit, the duties upon the teas so to be delivered must be first paid to the collector, or a bond with sureties to the satisfaction of the collector, given in double the amount of the duties, payable as specified in the act. And if the duties on any parcel of the teas shall not have been paid or secured to be paid in the manner last specified, (that is by bond with sureties,) within the term of two years, the collector is authorized and required to sell so much of the teas, as may be necessary to pay the duties and expenses on the teas remaining in store, and to return the overplus, if any, to the owner or owners thereof. There is nothing in this provision essentially to vary it from the ordinary deposite of goods between individuals, as a pledge to secure the payment of a debt. It is unimportant that the importer was liable for the duties without his bond, or that the government had possession of the teas, and a lien for the duties before the deposite. Of this there can be no doubt. But the government, by the provisions of this act, has agreed to hold this security under a different modification, and with different powers, than it possessed before. And whether this arrangement is exclusively for the accommodation and benefit of the importer, or not, cannot alter the question. The possession of the property and the liability of the importer constituted the security which the government had for the duties; and that continues until discharged, from time to time, upon different parcels of teas delivered out of store, under the permit of the collector, according to the provisions of the act. And what security could be more ample and satisfactory to the government? It is much more safe than the personal responsibility of individuals, especially upon so long a credit as two years. This security cannot be lost without the misconduct of the agents of the government.

I do not mean to be understood that the lien is discharged by any such misconduct, if possession is regained so as to enable the government to enforce the lien. But how long such lien continues, after the teas have got into circulation in the market, is a question I leave untouched. If the teas remain in store for the two years, under the general bond, can it with any propriety be said, that the government has no security for the duties? The law does not authorize the landing until the duties are paid or secured. And if the general bond of the importer, and the possession of the teas, landed and held under the inspection and control of the officers of the customs, (according to the 38th section of the act,) and the election of the importer, to have them deposited in stores, do not constitute the security, by what authority were they landed? The security required to be given, upon granting the permit, to deliver the teas out of store in parcels, cannot be the security required upon landing. That is an after transaction, and totally distinct in its provisions. The one is the general bond of the importer, on a credit of two years, and a deposite of the teas in the store. The other the personal security of individuals for the duties upon the particular parcels delivered out of store, and payable at much shorter periods, according to the amount of duties. The latter is pro tanto a substitution for the former. If at the expiration of two years the duties shall not have been paid, or secured by bond, with sureties, so as to discharge the lien, the teas are dealt with in the same manner as property pledged in ordinary cases as security for a debt. They are to be sold and the debt and expenses paid, and the surplus returned to the owner;—not forfeited. The acceptance of goods as a deposite for the security of duties in lieu of personal security, is a provision incorporated in all our collection laws, from the first organization of the government to the present time. See Acts 1789 and 1790 (2 Laws [Bior. & D.] 3, 161 [1 Stat. 42, 168]); Act 1799 (3 Laws [Bior. & D.] 195 [1 Stat. 674]). The collector, in lieu of sureties, is authorized to accept of a deposite of so much of the goods as shall in his judgment be sufficient security for the amount of the duties for which the bond shall have been given; which goods are to be kept at the expense and risk of the party on whose account they have been deposited, until the bond becomes due; and if the bond shall not then be paid, so much of the deposited goods as shall be necessary to pay the same, with the costs and charges, are to be sold. These are essentially the same provisions as those in relation to teas. There is a bond in both cases given by the importer. The goods are substituted in place of sureties, and are called a deposite. If the bond in each case shall not be paid according to its condition, the goods are to be sold, and the duties and expenses paid, and the surplus returned to the owner. There can be no reason why the same meaning should not be attached to the term deposite in both cases. If in the one case it has a technical meaning,

and signifies a pledge, I am unable to discover why it should not have the same meaning in the other. The only difference between the cases is, that with respect to teas, there is a deposite of the whole, and the lien continues, until discharged by a substitution of personal security, as they are delivered out of store in parcels as may be required. And with respect to other goods, a part of the importation on which the duties were payable, are received as a substitute for sureties, and the lien on the residue is at once discharged. But this cannot materially change the essence and nature of the transaction. The deposite in both cases is in lieu of personal sureties. For with respect to teas as well as other goods, the importer has an option to give a bond with sureties, instead of making a deposite.

The different modes of securing duties, when not paid at the time of the entry, are all prescribed in this same 62d section. It may, in all cases above fifty dollars in amount, be done by the bond of the importer with sureties. And upon all goods, except teas, by a like bond for the amount of duties, with a deposite of goods sufficient to pay such duties and expenses. And with respect to teas, a bond in double the amount of duties, with a deposite of the teas, according to the special regulations pointed out in the act. This appears to me to be the plain and obvious interpretation of this section of the law. And whenever the terms "duties secured" occur, as they do in various parts of the collection act, they embrace these different modes, unless restricted to one or the other, as they sometimes are. To consider the deposite of teas in stores as done merely for safe keeping, and because the importer is not able to find personal securities for the duties, does not strike me as being a just construction of this provision. If such had been the sole object, and possession retained by the government with no other view, that possession would, as in other cases where duties are not paid or secured at the time of entry, have been held exclusively by the revenue officers. Instead of which, the possession is held jointly by the importer and the inspector, at a store agreed upon between them, and under two locks, the key of one to be kept by the importer or his agent, and the key of the other by the inspector: so that all lawful interference with such deposite, until the expiration of two years, by one party, without the assent of the other, is rendered impracticable. All this shows an arrangement, with the concurrence of two parties, having the right and the power to act on the subject; and not the act of one, by reason of the inability of the other to avoid it. It is a course submitted by law to the option of the importer; and to say he was driven to it on account of his inability to elect the other alternative, would seem rather more like aggravating his necessities, than fairly presenting to him an option, which necessarily implies the ability to choose. The construction I have given to the provision is in every respect calculated for the security of the revenue and the accommodation of the merchant. The inspector is required to attend at all reasonable times, to deliver out such parcels of teas as may be required, under the permit of the collector, on the duties being paid, or secured by bond with sureties, which is to be accepted as a substitute for such parcels; by which the government is amply secured, and the interest and convenience of the importer greatly promoted. But any other construction would be interposing greater restrictions and embarrassments with respect to the importation of teas than any other articles, which was clearly not the intention of the law. The duties were, therefore, in my judgment, secured by the general bond of the importer, and the deposite of the teas in store, according to the provisions of the act, as found by the special verdict. And if so, where is the ground of forfeiture? No fault has been imputed to the owner. Forfeiture, throughout the act, is visited only upon fraud, misconduct, and gross negligence, in the party or his agents. Admitting the lien for the duties still continues, and that the government has a right to reclaim the possession, and enforce the payment of the duties, (which by the by are not yet due;) that would seem to be all that justice would demand, or policy require against an innocent party. But to follow this up with the penalty of forfeiture under such circumstances, is what I should be very unwilling to sanction. I find no special provision in any act of congress calling for the application of such a severe rule, and it is certainly utterly at variance with the general principles of law. All that can be claimed out of property pledged or mortgaged, is satisfaction of the debt, for which it is held as security, and the expenses incurred by reason of a noncompliance with the condition upon which it is so held.

It was said at the bar, that the same principle which is expressly adopted in the 5th section of the act of the 20th of April, 1818 (6 Laws [Bior. & D.] 354 [3 Stat. 470]), with respect to wines and distilled spirits; is by implication applicable to the teas in question. Should this be conceded, (which however is not) it would not draw after it a forfeiture in the present case. That act adopts substantially the same provisions with respect to the deposite of wines and distilled spirits, as are contained in the 62d section of the collection law with respect to teas. And then the 5th section declares, "That if any wines or other spirits, deposited under the provisions of this act, shall be embezzled or fraudulently removed from any store wherein they shall have been deposited, they shall be forfeited: and the person or persons so embezzling, hiding, or

removing the same, or aiding therein, shall be liable to the same penalties, as if such wines had been fraudulently unshipped or landed without payment of duty." The forfeiture here can only arise upon the fraudulent removal by the owner, or some person for whom he is responsible. It would surely not be incurred by the acts of mere strangers, or the inspectors of the revenue, who are the agents of the government. The rule I have before referred to, would apply with peculiar force to such a case, "that the law is not understood to forfeit the property of owners on account of the misconduct of mere strangers, over whom such owners could have no control."

Upon the whole then, after the most mature and deliberate examination of this case, I am of opinion, that no forfeiture of the teas in question has been incurred, and that the sentence or decree of condemnation must be reversed.

[NOTE. A libel was filed in the district court of the United States for the Southern district of New York, in the name of the United States, against 350 chests of hyson skin tea imported from Canton in the ship Benjamin Rush, as forfeited to the use of the United States. The chests of tea were seized by the collector of customs for the district of Philadelphia on the 6th of December, 1825. at the city of New York, on waters navigable from the sea by vessels of 10 or more tons burden. The district court decreed the teas to be forfeited to the United States, from which sentence an appeal was taken to the circuit court, where the decree of the district court was reversed. On appeal to the supreme court the decree of the circuit court, awarding restitution to the claimants, was affirmed. 12 Wheat. (25 U. S.) 486.]