UNITED STATES v. TWO BARRELS WHISKY et al.

(Circuit Court of Appeals, Fourth Circuit. August 11, 1899.)

No. 294.

INTERNAL REVENUE—FORFEITURES—CONVEYANCE USED FOR REMOVAL OF UN-
STAMPED LIQUORS.

It is not the purpose of the internal revenue laws to work the forfeiture
of the property of any owner unless he knowingly or negligently con-
tributes to their violation, and, where a team and wagon were used for
the conveyance of unstamped barrels of whisky being removed with intent
to defraud the government of the tax thereon, in violation of Rev. St. §
3450, without the knowledge or consent of a mortgagee, who, by reason
of condition broken, was the legal owner of such team and wagon under
the laws of the state, and had taken proper steps to obtain possession
thereof, the property is not subject to forfeiture as against him.

In Error to the District Court of the United States for the Western
District of North Carolina.

Spencer Blackburn, Asst. U. S. Atty. (A. E. Holton, U. S. Atty.,
on the brief), for the United States.

Z. V. Taylor (Bynum, Bynum & Taylor, on the brief), for defendant
in error.

Before GOFF, Circuit Judge, and BRAWLEY and WADDILL, Dis-
trict Judges.

BRAWLEY, District Judge. This is a libel of information, which
sets forth the seizure of a horse, mule, and wagon, the property of
Harvey Latham, July 17, 1896, charging him with an attempt to de-
fraud the United States of a tax on two barrels of unstamped whisky
found in the wagon, and praying a decree of forfeiture for violation
of sections 3289, 3450, 3453, of the Revised Statutes. The facts agreed
on are that P. G. Deaton borrowed from Harvey Latham, March 9,
1895, $135, and gave a note due March 9, 1896, and chattel mortgage
to secure the same, which mortgage was duly registered; that on
July 6, 1896, Harvey Latham had given his chattel mortgage to the
sheriff of Montgomery county, with instructions to seize the property
for debt, but before the sheriff had taken possession a deputy collector
found the horse, mule, and wagon in the possession of Oliver Deaton,
son of P. G. Deaton, in Randolph county, who was hauling two bar-
rels of unstamped whisky, which has been forfeited. Harvey La-
tham had no interest in this whisky, had no knowledge of its removal,
and had not assented to the use of the horse, mule, and wagon for
that purpose, and no indictment has been laid against him. Section
3289 of the Revised Statutes provides that "all distilled spirits found
in any cask or package containing five gallons or more, without hav-
ing thereon each mark and stamp required by law, shall be forfeited
to the United States." Section 3450 provides that "whenever any
goods or commodities, for or in respect whereof any tax is or shall be
imposed, * * * are removed, or are deposited or concealed in any
place, with intent to defraud the United States of such tax, or any

part thereof, such goods or commodities * * * shall be forfeited; and in every such case all the casks * * * containing * * * such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal, or for the deposit or concealment thereof, respectively, shall be forfeited; and every person who removes, deposits, or conceals * * * any goods or commodities, for or in respect whereof any tax is or shall be imposed, with intent to defraud the United States of such tax, or any part thereof, shall be liable to a fine or penalty of not more than $500." Section 3453 authorizes the collector or deputy collector to seize all the goods, etc., which are in possession of any person for the purpose of being concealed or removed in fraud of the internal revenue law. Under the law of North Carolina the mortgagor has the right of possession of personal property before condition broken, but after condition broken the mortgagee is entitled to have the possession of the property, and the legal title is in him. And in this case the sheriff, under the usual process, had been directed to seize the property, but, as it appears that the property was beyond the limits of his county, he had not actually taken it into possession.

The high tax on distilled spirits offers extraordinary temptation to fraud, and the habits of the people of certain sections and the geographical configuration of the country afford unusual facilities for its perpetration. The government, by successive enactments and impositions of penalties, punishments, and forfeitures, is engaged in a constant struggle to prevent violations of the law, and protect its revenues. Some of these laws in relation to distillers, distilleries, and distilled spirits may appear to be harsh, but the court cannot refuse to carry them into effect, or allow itself to be controlled by consideration of the supposed or real hardship of these enactments, nor open the door to opportunities of perpetual evasion. It is admitted that Harvey Latham is innocent of any intention to violate the revenue law, and that his property was in the possession of Oliver Deaton without his knowledge or consent, and the question is whether the mere accident of its situation can give it a criminal character independent of its owner's fault, and thus subject it to the extreme penalty of forfeiture. Guilty knowledge or evil intent is not a necessary ingredient in statutory offenses, and the maxim that crime proceeds only from a criminal mind has no controlling effect in limiting the operation of statutory penalties to those only who consciously violate the law. There being an undoubted competency in the lawmaker to declare certain acts criminal irrespective of the motive, these investigations are limited to a judicial ascertainment of the mind of the legislature without inquiry into the mind or motive of the doer of the thing inhibited. Says Mr. Justice Gray in U. S. v. Stowell, 133 U. S. 12, 10 Sup. Ct. 245:

"By the now settled doctrine of our court, statutes to prevent frauds upon the revenue are considered as enacted for the public good, and to suppress the public wrong, and therefore, although they impose penalties and forfeitures, not to be construed like penal laws generally in favor of the defendant, but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature."

Penalties and forfeitures, although generally the consequences of crime or guilt, do not necessarily imply the one or the other. As the forfeiture of a man's property is one of the severest punishments that the law can inflict, the mind is naturally perplexed by two considerations of directly opposing tendency,—the one being the principle of natural justice, which revolts at the punishment of the innocent; the other the apparent necessity of doing that very thing, in view of public policy, in order to prevent those shifts and subterfuges by which the revenue laws are evaded. The statute must be clear and unequivocal which imposes upon a court the duty of punishing one man for the fault of another. The object of section 3450 is to punish all persons who, with intent to defraud the government of the tax, remove or conceal goods upon which the tax has not been paid, and, in addition to the punishment of such persons, it provides that all conveyances and animals used in the accomplishment of this unlawful purpose shall be forfeited. Undoubtedly, there is a presumption against any one whose property is found employed in this unlawful business that it is so engaged with his consent, but can it be that this presumption is irrebuttable? The contention of the government is that, this being a proceeding in rem, it is the guilty thing that has offended, and that this is to be forfeited, irrespective of any participation of its owner. If this team and wagon had been stolen from the owner, it would be clearly unjust, unreasonable, and preposterous to forfeit it because it was used by the wrongdoer in the transportation of illicit liquor. If this exception is admitted, it would follow that property has no guilty character, except as connected with persons who have charge of it, and the result is that it is the duty of the court to inquire into the facts; and, if it appears clearly that the owner has not hired or loaned it to another for an unlawful purpose, or knowingly permitted it to be in the possession of a party likely to engage in an unlawful business, or negligently suffered it to be controlled by a stranger, whose character gave no assurance that it would not be unlawfully employed, or is in some way justly chargeable with blame or negligence, he ought not to suffer the sweeping condemnation that justly falls upon those who consciously violate the law, and upon those upon whom is laid the duty of vigilance, and who negligently or otherwise fail in that duty.

The case of Lilienthal's Tobacco v. U. S., 97 U. S. 237, cited in behalf of the government, seems to assume that the fact that the property is found in the actual violation of the law makes out only a prima facie case for forfeiture, and that it is the duty of the court to inquire into facts; Mr. Justice Clifford using the following language:

"High authorities support the proposition that when a presumption of fact exists against a party in case of seizure in rem, the court may instruct the jury that the burden is on such party to remove the presumption, and that, if he does not, the case must, in an issue in a civil case, go against him on such a point."

The object of the statute is to force the payment of the tax upon all liquors manufactured. It endeavors to accomplish this by inflicting punishments, fines, imprisonments, and forfeitures upon all actually guilty of attempting to defraud the government, and by re-

96 F.—31

quiring vigilance upon the part of all in any way concerned in the business and property to prevent and disclose any illegal acts, under penalty of forfeiture of their goods. It imposes upon all those whose property is in danger the duty of watchfulness. It requires all those whose property is engaged or employed in a regulated business to be vigilant, to see that the persons using that property should not devote it to any unlawful purpose. Where premises are leased for the purpose of a distillery, the person so leasing is presumed to know that there is opportunity and danger of the property being used in furtherance of some inhibited purpose; but in U. S. v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, it would seem that, if one did not know that the premises were to be used as a distillery, he should not be made to suffer forfeiture; for in that case the owner of the land upon which the illicit distillery had been set up had previously made a mortgage to one who did not permit or connive at an illicit distillery, and the court held:

"It being admitted that the business of a distiller was not carried on with the mortgagee's permission or connivance, and that he did not even know until after the seizure that a still had been set up on the premises, the mortgage is valid as against the United States, and, so far as concerns the real estate, the judgment of condemnation must be against the equity of redemption only."

Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, was a proceeding in rem to establish the forfeiture of certain goods alleged to have been fraudulently imported without paying the duties thereon. There had been an order of the court requiring the claimants of the goods to produce their invoices for the inspection of the government attorney, and it was held to be an unconstitutional exercise of authority. Mr. Justice Bradley uses this language:

"We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of an offense committed by him, though they may be civil in form, are in their nature criminal. If the indictment has been presented against the claimants, upon conviction the forfeiture of the goods would have been included ·in the judgment. If the government attorney elects to waive the indictment, and to file a civil information against claimants,—that is, civil in form,—can he, by this device, take from the proceeding its criminal aspect, and deprive the claimants of their immunities as citizens? This cannot be. The information, though technically a civil proceeding, is, in substance and effect, a criminal one. It is his breach of the law which has to be proved to establish the forfeiture, and it is his property which is sought to be forfeited;" and he quotes the words of a great judge: "Goods, as goods, cannot offend, forfeit, unlade, pay duties, or the like, but men whose goods they are."

One of the earliest cases of forfeiture reported is that of Mitchell v. Torup, Parker, 227, which was a proceeding in 1766 against a ship for having aboard some tea in violation of St. 12 Car. II. c. 4; and Chief Baron Parker, repelling the argument against forfeiture because of the apparent harshness of the law, says:

"But the owners of the ships are to take care what master they employ, and the master what marines; and here negligence is plainly imputable to the master, for he is to report the cargo of the ship, and, if he had searched and examined the ship with proper care, according to his duty, he would have found the tea, as the officer did, and so might have prevented forfeiture."

· In Peisch v. Ware, 4 Cranch, 347, which is a revenue case, Chief Justice Marshall says:

"The court is also of opinion that the removal for which the act punishes the owner with forfeiture of the goods must be made with his consent or connivance, or of that of some person employed or trusted by him." And again: "The law is not understood to forfeit the property of owners or consignees on account of the misconduct of mere strangers, over whom such owners or consignees can have no control."

In 651 Chests of Tea v. U. S., 1 Paine, 499, Fed. Cas. No. 12,916, Circuit Justice Thompson says:

"Whilst, on the one hand, security to the revenue of the country may require rigid laws to guard against frauds, yet, on the other, the rights of the innocent ought to be protected. I am not aware of a single instance where, by any positive provision in the revenue laws, a forfeiture is incurred that does not grow out of some fraud, misconduct, or negligence of the party on whom the penalty is visited."

And in The Lady Essex, 39 Fed. 767, Judge Brown says:

"The authorities are direct to the proposition that a forfeiture of goods for a violation of the revenue laws should not be imposed unless the owner of such goods, or his agent, has been guilty of an infraction of such laws. It is clear that, if the goods be stolen from the owner, or if a person has obtained possession of them fraudulently, or without authority, no act of his can forfeit them as against the true owner."

The two cases most apposite to that now under consideration are U. S. v. Two Horses, Fed. Cas. No. 16,578, and U. S. v. Two Bay Mules, 36 Fed. 84. In Case No. 16,578, Judge Benedict held that two horses and a truck, which were used in conveying certain distilled spirits, which had been condemned by default as forfeited to the United States by reason of having been removed with intent to defraud, were subject to forfeiture. The driver of the horses and truck in that case was the owner, and evidence was offered to show that he had no knowledge of the fraudulent character of the spirits, or of any fraudulent intent in connection with the removal thereof, which evidence was excluded, and verdict for the government directed. He uses this language:

"The reason why this express provision was made in respect to the forfeiture of things used in removing spirits contrary to law was to link the fate of the vehicle with that of the articles conveyed, in order to deter parties from putting their vehicles at the disposal of those who would be likely to use them for purposes of fraud;" and quotes the remark of Judge Woodruff: "It is expected that the owner of property will see to the uses made of it at his peril."

In the Case of Two Bay Mules, the owner and claimant, one W. H. York, had hired the offending property to Nick York for the purpose of hauling a load of produce to market, and while in his possession they were seized, being in the act of transporting whisky upon which the tax had not been paid.

In the first case the owner was himself engaged in hauling the whisky; in the latter he knowingly permitted another to use his team, who perverted it to the unlawful purpose. While in neither case was there a conscious violation of the law, in both negligence might be fairly attributable, and the thing really punishable was their carelessness in putting their vehicles at the service of those likely to violate the law, and who actually did violate it. In the case at bar it is admitted that this property was in possession of the wrongdoer "without the consent and knowledge of the claimant." The attorney

for the government contends, in the argument before us, that it was the duty of claimant to show, also, that the possession of Oliver Deaton was without the knowledge and consent of P. G. Deaton, the mortgagor. If there remained in P. G. Deaton, after condition broken, any right of possession or right of property, this inquiry would be pertinent, but it appears from the agreed statement of facts that the property was sold for less than the mortgage debt. The information is against Harvey Latham, who is alleged to be the owner, and, as we understand the law of North Carolina, he had the right of possession and the right of property; and it would be pressing the implication of negligence further than justice demands, and administering a harsh law too harshly, if, under all the circumstances of the case, in the absence of any suspicion of fraud or connivance or proof of negligence, the innocent owner should be made to suffer from the wrongdoing of one who got possession of his property without his knowledge or consent. It is not to be assumed that the government desires to take the property of a citizen charged with no crime without some proof that he has knowingly or negligently contributed to its commission, and undoubtedly the secretary of the treasury, upon the facts of this case agreed upon, and as found by the trial court, would, in the exercise of his discretion, remit the forfeiture; but, if this man has rights, a court of justice is the place to maintain them, and he should not be compelled to ask them of executive officers as a favor. The judgment of the court below is affirmed.