UNITED STATES OF AMERICA *v.* THE SCHOONER
"KAWAIULANI", her tackle, apparel, etc.

DECIDED:  JUNE 20, 1902.

1.  In a proceeding to condemn as forfeited, under Section 3450 R. S.
    U. S., the schooner Kawaiulani, for being used in the removal of
    certain distilled liquors whereon a U. S. revenue tax was imposed
    where such liquors were found concealed on said vessel, and it

appeared that the same were deposited and secreted thereon by the Captain thereof, acting under a verbal lease from the owners and admitted to be rightfully in possession of the said vessel, and who admitted to the Collector of the Internal Revenue, who seized the liquor and the vessel, that he knew that it was contrary to the laws of the United States to manufacture distilled spirits where the tax was not paid to the Internal Revenue Department; and it appearing that no taxes have ever been paid in these Islands to that Department on this class of liquors;

*Held,* that the intent of the Captain of said vessel to defraud the Government of the United States of the tax imposed on such liquors is clear, and by depositing and concealing the same on said schooner Kawaiulani, a forfeiture of said vessel was worked.

2.  Okolehao has a definite meaning in the Territory as belonging to a special intoxicating liquor distilled from the ti root, and where it was shown that the okolehao seized in this case was obtained somewhere in the mountains on the other side of the Island of Oahu near a place called Kahana, the presumption is that it was made in the Islands.

3.  Under Section 3333, R. S. U. S., the burden of proof in this class of cases is upon the claimant of the property seized.

INTERNAL REVENUE. 
⎰ Libel of Information under Section 3450 R. S. U. S. to condemn vessel as forfeited to the United States. ⎱

*Robert W. Breckons,* U. S. District Attorney, for government. 
*C. W. Ashford,* for claimants.

ESTEE, J.   This is a libel of information based upon Section 3450 of the Revised Statutes of the United States and brought to condemn as forfeited to the United States, the schooner "Kawaiulani", seized in the port of Honolulu, by the Collector of Internal Revenue, for being used in the removal of certain distilled liquors whereon a United States tax was imposed, and which liquors were deposited and concealed on board said vessel by one John Moses Ulunahele, the master thereof, with intent to defraud the United States of the said tax.

It is claimed that one Hong Quon and one L. Apana were at the time of the seizure of the said vessel, the owners of the same; the said John Moses Ulunahele, acting as their lessee in command of the said vessel as its master, under an oral lease.

It is further admitted that the Collector of the Internal Revenue found locked away on board the said schooner, two one-gallon demijohns of a native liquor, commonly known in the islands as "okolehao," upon which it is claimed by the government no tax has been paid as required by law.

It is claimed by the said alleged owners of the vessel, that admitting that the said schooner had on board deposited and concealed, the said okolehao, yet as they were utterly ignorant of the fact and entirely innocent of any connivance at the said alleged act, that they should not be made to suffer for the act of another.

Section 3450 of the Revised Statutes provides in part, as follows:

"Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils or vessels proper or intended to be made use of or in the making of such goods, or commodities are removed or are deposited or concealed in any place with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities ..........shall be forfeited; and in every such case........ every vessel, boat, cart, carriage or other conveyance whatsoever, and all horses or other animals and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited..........".

It appears from the testimony of Roy H. Chamberlain, the Collector of Internal Revenue, and of Mr. Handy, the United States Deputy Marshal, who made the seizure, on May 24th, 1902, that they, in company with a Deputy Internal Revenue Collector, went down to the wharf in Honolulu, where the vessel was tied up, having just arrived from Kahana, a point on the Island of Oahu; that the captain was aboard of the vessel and the Collector made himself known to him in his official capacity and asked him if there was any okolehao being made at Kahana, to which the Captain replied there was, but upon being interrogated as to whether there was any on board his schooner, said "no". It further appears that the Collector asked him if he knew what okolehao was, and he said he did, and upon being

questioned further as to whether he knew it was contrary to the laws of the United States and to the Internal Revenue department to manufacture distilled spirits where the taxes were not paid to the Internal Revenue Department, he said he did know it.

The Collector then served him with his search warrant, and went down into the cabin and proceeded to make a search of the vessel for okolehao, the Captain denying up to that time that he had any aboard the vessel, but upon the Collector making a strenuous search and commencing to pull up a lot of sail cloth, the Captain finally produced some empty bottles and one that had a small amount of liquor in it, and he stated that he had it for his own use and for his men. Being asked if he had any more, he answered no. The Collector continued his search, whereupon Captain Moses went to a locker in the side of the vessel and unlocked the cover which had a padlock on it, and took out a sack and pulled out a one-gallon demijohn of the liquor, and then went down and got another. The Collector made a further search, but found no more.

It appears from the testimony of one Peter Makia, a witness introduced by the government, and who testified that he lived at Kahana, that he saw the captain of the vessel on the 22nd day of May, 1902, on the porch of his house at Kahana, and at the captain's request, sent for and got him the liquors that the captain wanted, and had asked him to get for him, namely, some okolehao; that he, Makia, went to a Japanese for the liquor; that the Japanese went up into the mountains and was gone three hours, coming back with the two demijohns of the liquor; (which were produced in Court) and which were taken down to the schooner by the captain and a German boy.

It seems to be clear from the testimony that Captain Moses knew that he was violating the law when he received and took this liquor aboard of his vessel. The circumstances of the case all tend to show a knowledge of the law and an intent to evade its provisions. He denied the existence of the liquor aboard the vessel, as is shown by both the testimony of Chamberlain and

the Deputy Marshal, and then produced it when he saw it was certain to be discovered.

No testimony was introduced whatever on the part of the claimants, save that of one of the alleged Chinese owners of the vessel, a Chinaman who claimed the schooner seized and who professed to be ignorant of the transactions of the master thereof in relation to this liquor. It is admitted, however, that the master of the vessel was acting as such under a verbal lease from these claimants and that he was rightfully in possession of the boat. In fact it is tacitly admitted that the main facts of the libel are true.

In the absence of any satisfactory explanation, it must be presumed from an examination of all of the facts, that Captain Moses intended to defraud the Internal Revenue Department of the government of the tax imposed on such liquors, and a forfeiture of the vessel is thereby worked. Section 3450 R. S. U. S. *United States v. Brewery Utensils*, Fed. Case No. 14,-641.

Some discussion was had tending to show that no proof was made as to this liquor being of an illicit character, or that it was produced in the United States since the 14th day of June, 1900, the date when the Act of Congress for the government of the territory went into effect, but not the date of annexation. It was shown conclusively that the liquor involved in this inquiry was okolehao, and that term has a definite meaning in the territory as belonging to a liquor distilled in the Islands from the dried ti root. The Supreme Court of the territory in the case of the *Republic of Hawaii v. Akoni*, 11 Haw. 53, held that "okolehao is a well known spirituous liquor distilled from the ti root, and very intoxicating."

It was also shown at the trial where this liquor was obtained, to-wit; somewhere in the mountains on the other side of the Island of Oahu, near a place called Kahana. The presumption is that this liquor was made in these Islands. The testimony of the Collector of the Internal Revenue shows that no tax has ever been paid on any of this liquor distilled in the Islands, although it is a matter of common knowledge that it is being

made constantly. It is difficult to determine at exactly what period of time this liquor was manufactured, but it was produced in an illicit and secret manner. All prosecutions on the part of the government would be unavailing, and collections under the revenue laws would be defeated, if the government was compelled to prove when illicit liquors were produced. Of necessity, it was produced in this territory because it is distilled from the ti root, which is grown here and no testimony appears showing it is grown elsewhere.

And again, the burden of proof in this class of cases is upon the claimants of the property seized. Section 3333 R. S. U. S.; *United States v. 508 Barrels of Spirits,* 5 Blatch. 407 Fed. case No. 15,113; *United States v. 6 Barrels of Distilled Spirits,* 5 Blatch. 542, Fed. case 16, 294; *Boyd, et al v. United States,* 14 Blatch. 317; Fed. case 1749; *United States v. 78 Barrels,* 7 *Int. Rev.,* Rec. 4; Fed. case, 16,257.

A consideration of the facts that influenced Congress in the passage of these laws, apparently so harsh in their nature, enables us to appreciate the necessity for the same. The many opportunities afforded to evade the internal revenue laws, and the numerous violations thereof, doubtless induced Congress to pass these stringent measures, so as to not alone punish the guilty trespasser against the law, but also to impress upon the owners of property the necessity for a vigilance in the selection of their agents or lessees or those to whom they intrust the same, that the said property may not be put to illegal purposes. In the making of these laws, Congress trusted to the strong sense of self-protection that actuates men, to impress upon them a prudence and a vigilance that would be a factor in the prevention of many of these frauds upon the government.

Thus, in the case of the *United States v. Two Horses,* Fed. Case No. 16,578, 9 Ben. 529, the Court said:

"The reason why this express provision was made in respect to the forfeiture of things used in removing spirits contrary to law, was to link the fate of the vehicle with that of the article conveyed in order to deter parties from putting their vehicles at the disposal of those who would be likely to use them for the pur-

poses of fraud...........It is expected that the owner of prop-
erty will see to the uses made of it at his peril." *United States
v. Two Barrels of Whiskey*, 96 Fed. 479; *United States v.
Two Bay Mules*, 36 Fed. 84.

It appears from the decision of the Supreme Court of the
territory hereinbefore referred to that okolehao is a native liquor,
a strong intoxicant and a product of these Islands. None of
this class of liquors has ever paid a tax to the government in this
territory so that no tax could have been paid on this particular
liquor.

Counsel for libellees submit the proposition that this liquor
may have been smuggled into the territory and adds that there
was no evidence that it was not so smuggled, and hence assumes
that it might have been brought into the territory. That was
no part of the evidence to be offered by the government, but was
a matter of proof for the claimants, if any defense of that na-
ture was to be relied upon. The further point made by counsel
that the time of the production of this liquor is all important,
because the territorial enabling act went into effect on June 14,
1900, and that it must appear affirmatively that the liquor was
made since that date, or it could not be considered a production
of the United States, and was therefore a foreign instead of an
American product, may be answered in the same manner, that
that proposition too, if made, was for the proof of the claimants,
and no evidence was offered on their part.

The right of taxation for national purposes is a right inherent
in the national sovereignty, and is unlimited except by national
laws. This territory may and does levy taxes for municipal
purposes, but the nation levies and collects taxes for national
purposes, and the laws providing for internal revenue collections
are national laws binding alike on the people of the states and
territories. The courts have nothing to do with the character or
the policy of these laws; the single duty of the courts is to en-
force them. In pursuance of that duty the court holds in this
case, that from all the testimony presented, okolehao is distilled
spirits and a most dangerous intoxicant; that the liquor in ques-
tion here is okolehao; that it was made in the territory; that

it was illicitly manufactured and has paid no internal revenue tax, and that Captain Moses knew these facts when he secreted it on board the schooner Kawaiulani. That the depositing, secreting and removal of this liquor on board his said vessel was done with intent to defraud the government of the United States of the tax due upon it. No testimony appearing to the contrary, this court will presume that from all the circumstances surrounding the case the liquor was distilled since the annexation of the territory by the United States, and that in any event it was liable to the tax prescribed by the laws of the United States.

Let a judgment of condemnation of the vessel Kawaiulani, her apparel, tackle, etc., be entered in accordance with this opinion, with costs of suit.