UNITED STATES v. ONE BLACK HORSE et al.

(District Court, D. Maine.    April 8, 1904.)

No. 96.

1. SMUGGLING—HORSES AND VEHICLES—FORFEITURES—INTENT OF OWNER.

Rev. St. § 3061 [U. S. Comp. St. 1901, p. 2006], makes it the duty of a revenue officer to search any vehicle on which he suspects there is merchandise subject to duty, or which has been introduced into the United States contrary to law, whether by the person in possession or upon such vehicle; and, if such merchandise is found on the vehicle, the officer is required to seize and secure the same.   Section 3062 [U. S. Comp. St. 1901, p. 2007] provides that such vehicle shall be liable to seizure and forfeiture; and section 3063 [U. S. Comp. St. 1901, p. 2007] declares that vehicles used by common carriers shall not be subject to forfeiture unless it shall appear that the agent of the carrier in charge of the vehicle at the time of the unlawful importation or transportation was a consenting party thereto.   Held, that section 3063 should be construed as excluding vehicles other than those used by common carriers from its application, and hence a vehicle owned and let by a liveryman, and used wholly within the United States for the purposes of transporting liquor illegally brought across the Canadian border, was subject to seizure and forfeiture, though the liveryman had no knowledge of the purpose for which the team was to be used.

Isaac W. Dyer, U. S. Dist. Atty.

Foster & Hersey, for claimant, Wm. E. Foss.

HALE, District Judge.   This case comes before the court on a libel by information of the United States of America against one black horse, one harness, and one wagon, alleged to have been used by one William Elliott in conveying four bottles of liquor from the Province of New Brunswick into the Judicial and Collection District of Houlton, in the District of Maine, and to have been so used at the time of the illegal importation aforesaid.

William E. Foss, of Houlton, appears as claimant for said horse, harness, and wagon.   The case is presented on an agreed statement, as follows:

"The following facts are agreed upon by counsel, and are found as facts in the case:

"First. The first fact found is that the said William Elliott did smuggle the four bottles of liquor on the 8th day of August, 1903, and that said Elliott has since been convicted and sentenced for said act of smuggling.

"Second. That on the said 8th day of August said Elliott hired the horse, carriage, and harness, described in the information, of William E. Foss, the claimant, who was then and there engaged in the business of a livery stable keeper at said Houlton, and in letting horses for hire.

"Third. That said Foss at the time of letting the team to said Elliott had no knowledge or information that said team was to be used for any violation, or to aid in any violation, of the customs revenue laws of the said United States by said Elliott.

"Fourth. That said Elliott, having hired the team as aforesaid, did drive to a point very near the line, but on the United States side of it, and left the team in a shed within the United States, and within the town of Houlton. That said Elliott immediately went over the line, purchased the four bottles of liquor, returned, placed them in the carriage, and started to drive towards Houlton village.   Before he had completed his return journey the said four bottles of liquor and the said team were seized, as stated in the information."

The statutes of the United States (sections 3061–3063, Rev. St. [U. S. Comp. St. 1901, pp. 2006, 2007]) are as follows:

"Sec. 3061. Search of Vehicles and Persons. Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or, otherwise, he shall seize and secure the same for trial.

"Sec. 3062. Forfeitures. Every such vehicle and beast, or either, together with teams or other motive-power used in conveying, drawing, or propelling such vehicle or merchandise, and all other appurtenances, including trunks, envelopes, covers, and all means of concealment, and all the equipage, trappings, and other appurtenances of such beast, team, or vehicle, shall be subject to seizure and forfeiture. If any person who may be driving or conducting, or in charge of any such carriage or vehicle or beast, or any person travelling, shall willfully refuse to stop and allow search and examination to be made as herein provided, when required so to do by any authorized person, he shall be punishable by a fine of not more than one thousand dollars, nor less than fifty dollars.

"Sec. 3063. Privity of Owner. No railway car or engine or other vehicle, or team, used by any person or corporation, as common carriers, in the transaction of their business as such common carriers, shall be subject to forfeiture by force of the provisions of this title unless it shall appear that the owner, superintendent, or agent of the owner in charge thereof at the time of such unlawful importation or transportation thereon or thereby was a consenting party, or privy to such illegal importation or transportation."

Under the decisions of our courts, this and all other statutes relating to forfeitures in revenue cases must be construed fairly and reasonably, to arrive at the intention of the lawmaking body. In coming to this construction the court must remember that the construction is made in a civil case in a matter relating to forfeiture of property, and not relating to the punishment of an offender. It is the duty of the court to discover what was the intention of the lawmakers in framing this law. This belongs to a class of cases where the Legislature might undoubtedly declare an act criminal without respect to the motive of the doer of the act. The courts have repeatedly decided that in respect to statutory offenses an evil intent is not necessarily an ingredient. It is then necessary for us to inquire, not what was the intention of the claimant in this case, but what was the intention of the lawmaking power. Where the intention is left in any way obscure, the courts have repeatedly said that the forfeiture of goods for violation of revenue laws would not be imposed, unless the owner of the goods or his agent has been guilty of an infraction of the law. Peisch v. Ware, 4 Cranch, 347–362, 2 L. Ed. 643; United States v. Bags of Kainit (D. C.) 37 Fed. 326; United States v. Certain Celluloid, 82 Fed. 627, 27 C. C. A. 231; United States v. Two Barrels of Whiskey, 96 Fed. 479, 37 C. C. A. 518; The Lady Essex (D. C.) 39 Fed. 767; Six Hundred and

Fifty-One Chests of Tea v. United States, Fed. Cas. No. 12,916; United States v. Two Horses, Fed. Cas. No. 16,578. In the case of United States v. Two Barrels of Whiskey, 96 Fed. 479, 37 C. C. A. 518, a full examination of authorities is given, and much light is thrown upon the general subject of forfeitures in revenue cases. That case deals with a statute different from the statutes in the case at bar. In the statutes which were before the court in that case, the court found that there was no intention of the Legislature to forfeit property, except the property of owners, on account of the misconduct of strangers over whom the owners could have no control. Such has been the general construction of revenue statutes. In Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, the court, Mr. Justice Bradley, says:

"We are clearly of the opinion that proceedings instituted for the purpose of declaring forfeiture of a man's property by reason of an offense committed by him, though they may be civil in form, are by their nature criminal. * * * The information, though technically a civil proceeding, is in substance and effect a criminal one. It is his breach of the law which has to be proved to establish the forfeiture, and it is his property which is sought to be forfeited. * * * Goods, as goods, cannot offend, forfeit, unlade, pay duties, or the like; but men whose goods they are."

In this case, and in the cases which we have cited, the court was able to find some language in the statute which enabled it to construe such statute as implying that the Legislature did not intend to forfeit the goods, unless knowledge was shown on the part of the owners. It is claimed that in the case at bar the court should find that these statutes above quoted should be so construed as to mean that the claimant of goods must be charged with knowledge that his property is to be used in a manner offensive to the statutes, and, further, that it is not enough for the court to find that the property has been used in transporting smuggled property, but that, in order to create a forfeiture, the horse, wagon, and harness must be found to have assisted in the importation itself of the property. By the agreed statement it appears clearly that the horse, wagon, and harness were used in the transportation of the liquors within the United States, and not in bringing them over the line; and, further that they were used without the knowledge or consent of the owner.

Now, let us examine the statutes. Section 3061 makes it the duty of the revenue officer to search any vehicle on which he suspects there is merchandise subject to duty, or which has been introduced into the United States contrary to law, whether by the person in possession or upon such vehicle; and if the officer shall find merchandise on such vehicle which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in charge of the vehicle or upon the vehicle, or otherwise, then he, the said officer, shall seize and secure the same. The clear intention of Congress in making this law was to provide for the seizure of property which had been smuggled into the United States, either by the person in charge of it or upon the vehicle. Upon any reasonable and fair construction of the statute, it was clearly the intention of the Legislature to seize a vehicle which has been used either in the importation or the

transportation of smuggled property. Indeed, this clear intention of the Congress is gathered without recourse to "construction," but by a reading of the unambiguous language of the law. Where "there is no ambiguity, there is no room for construction." U. S. v. Morris, 14 Pet. 464, 10 L. Ed. 543. The above case is cited with approval in the opinion in the Northern Securities Case (just published, by the Supreme Court) 24 Sup. Ct. 436, 48 L. Ed. ——.

Section 3062 provides that "such vehicle," namely, a vehicle which has been found by an officer to be in use in transporting or conveying smuggled property, shall be liable to seizure and forfeiture. This statute should be construed, as all such statutes should be, with a view of giving the full force to all the language of the statute, under the principle that words are to be taken in a statute or in a contract under the rule of noscitur a sociis. The meaning of words is undoubtedly to be derived from the company in which they are found; but when this rule is applied in the interpretation of these statutes, no construction can be arrived at which is favorable to the claimant's contention. The duty of the officer in seizing is to seize property which is subject to duty, or has been introduced into the United States in any manner contrary to law. This statute is not one of the laws where doubt can be found as to the intention of holding offending property which has been used in smuggling without the knowledge of the owner. In such cases of doubt the courts have properly given the construction favorable to the claimant, and have imported the claimant's knowledge into the statute. In the statutes which are now before us in the case at bar, the court cannot find that there is any room left, after an intelligent reading of the law, to import such knowledge of the claimant into it.

Section 3063 provides that, in case of vehicles used by common carriers in the transaction of their business, such vehicles shall not be subject to forfeiture, unless it shall appear that such agent of the common carrier in charge of the vehicle at the time of such unlawful importation or transportation was a consenting party to the illegal importation or transportation. This section is very important in arriving at the intention of Congress in reference to the whole law before us. It provides distinctly that common carriers should be charged with knowledge before their property can be forfeited. The Legislature has clearly shown that it did not have such intention with reference to the vehicles of others besides common carriers. The rule "Expressio unius, exclusio alterius," is very important in the construction of statutes of this nature. The Congress has shown clearly in these statutes before us that it regards property as offending when used not only in the importation, but in the transportation, of smuggled goods. The case at bar is like the case of United States v. Two Bay Mules (D. C.) 36 Fed. 84, although the statute in this case makes the contention of the government much more reasonable than in the Case of the Two Bay Mules.

The court has well said, in such case, that "Congress has been induced to enact very comprehensive, specific, and stringent measures for the prevention and punishment of frauds" in revenue matters. The law which we are construing in the case at bar is much more comprehensive

and stringent than the law which was being enforced in the Case of the Two Bay Mules. In this case, as in that, the redress of the innocent claimant must be from the wrongdoer himself, or by application to the officers of the government invested with the authority to remit forfeitures. It is the clear duty of the court, although it may seem a harsh one, to construe the law reasonably and fairly, giving clear effect to the ordinary use of the English language.

Let a decree of condemnation be drawn in conformity with this opinion.