W. P. SKINNER ET AL. v. J. B. THOMAS, CHIEF OF POLICE, ETC.

(Filed 1 March, 1916.)

1. Intoxicating Liquors—Forfeitures—Police Powers—Courts.

Chapter 197, Public Laws 1915, requiring the police officer to take into his possession and keep any vessel, carriage, automobile, etc., used in conveying, concealing, etc., spirituous liquors, etc., and keep the same until the innocence or guilt of the defendant has been determined, and upon conviction of a violation of the prohibition law the "defendant shall lose all right, title, and interest in the property so seized," is a valid exercise of the police power of the State, which is left largely to the discretion of the lawmaking body; and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizen, or when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished.

**2. Same—Mortgages—Innocent Parties.**

Statutes providing for forfeitures should be strictly construed and not extended beyond the meaning of the words employed; and chapter 197, Public Laws 1915, providing for a forfeiture of carriages, automobiles, etc., used in conveying or concealing intoxicating liquors in violation of our prohibition law, etc., by its express terms has reference to the right, title, and interest of the person so using them in violation of the law, and does not extend to that of a mortgagee of a conveyance who is an innocent party and in no wise connected with the offense charged.

**3. Same—Interpretation of Statutes.**

The construction of the first section of chapter 197, Public Laws 1915, providing for a forfeiture of the vehicle wherein intoxicating liquors are conveyed or concealed, under the conditions named, that the forfeiture does not apply to the mortgagee of the vehicle who is a party innocent of the offense, is not varied by the provisions of section 2, as to the sale of the property seized when no person is arrested, or those of section 3, regarding the distribution of the proceeds of the sale.

CLARK, C. J., dissenting.

CIVIL ACTION tried before *Bond, J.,* on case agreed, at January Term, 1916, of PASQUOTANK.

This is an action to recover an automobile or a part of the proceeds of its sale, tried on the following agreed statement of facts:

1. That on or about 23 April, 1915, one Richard C. Webb was the owner of a Ford touring car No. 566967, purchased of the Auto and Gas Engine Works of Elizabeth City, N. C.

2. That on 23 April, 1915, said Richard Webb executed a mortgage on said automobile to the Auto and Gas Engine Works of Elizabeth City, N. C., in the amount of $425.

3. That there is now due on account of said mortgage indebtedness $280 and interest in the amount of $8.10, which amount is due the plaintiff after all credits have been allowed.

4. That on or about 7 December, 1915, the said Richard Webb, together with one Ed. Burnett and one Will Woodhouse, while conveying in the town of Elizabeth City, N. C., in the said automobile 44 gallons of intoxicating liquors in half-pints, pints, and quarts, were arrested by defendant as chief of police of Elizabeth City, N. C., and the said automobile seized. On 27 December, 1915, the said Richard Webb, together with the said Ed. Burnett and Will Woodhouse, were duly tried and convicted before Ernest L. Sawyer, trial justice of Pasquotank County, N. C., for violation of the liquor laws under Public Acts 1913 and 1915, and were duly sentenced by said trial justice, and that the said Richard Webb and Ed. Burnett have not appealed from judgment of said court; that after the conviction of the defendants aforesaid and on said 27 December, 1915, the said automobile was ordered confiscated by the said Ernest L. Sawyer, trial justice, as provided in

chapter 197, Public Laws 1915; that said automobile is now advertised for sale at public auction 29 January, 1916, by defendant J. B. Thomas, chief of police of Elizabeth City, N. C., as provided in said chapter 197, Public Laws 1915.

5. That the said plaintiffs were innocent third parties respecting the contraband conveyed in said car by the said Richard Webb, and the said plaintiffs claim an interest in said automobile to the extent of the indebtedness alleged in the premises.

6. That the value of the automobile is in excess of $200.

Judgment was rendered in favor of the plaintiffs, and the defendant excepted and appealed.

*C. R. Pugh, Ehringhaus & Small for plaintiffs.*
*Ward & Thompson for defendant.*

ALLEN, J. The plaintiffs sold an automobile to Richard Webb on 23 April, 1915, for $425, and on the same day Webb executed a mortgage to the plaintiffs conveying the automobile to secure the purchase price. Webb has made payments on the mortgage debt, and the amount now due thereon, including interest, is $288.10.

On or about 7 December, 1915, the automobile was seized by officers of the law, while in the possession of Webb, and it was at the time being used illegally to transport intoxicating liquors. Webb has been convicted of a violation of law.

The plaintiffs had no knowledge of the illegal use of the automobile, and were not connected in any way with the intoxicating liquors or with their transportation.

It is not denied upon these facts that the interest of Webb is forfeited to the State, and the sole question presented by the appeal is whether the rights of property of the plaintiffs, as mortgagees who have done no wrong, can be confiscated on account of the illegal acts of Webb.

The principle involved is important to the public because the enforcement of the prohibition law of the State may be affected, and to the individual citizen, whose property rights should not be impaired or destroyed on account of the wrongful acts of others except upon the ground of public necessity, and when the legislative authority to do so is clear and unambiguous.

The authority to confiscate the property of the plaintiffs, if it exists, is under the police power of the State, conferred by chapter 199, Laws 1915.

The police power is an attribute of sovereignty, possessed by every sovereign State, and is a necessary attribute of every civilized government. 6 Rul. Case L., 183. "It is the power to protect the public health and the public safety, to preserve good order and the public

morals, to protect the lives and property of the citizens, the power to govern men and things by any legislation appropriate to that end." 9 Ency. of U. S. Reports, 473. "Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property." *Slaughterhouse cases,* 16 Wall., 36, 21 L. Ed., 394.

The exercise of this power is left largely to the discretion of the law-making body, and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizen, or when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished. 6 Rul. Case L., 236. Following this line of authority, it was held at the last term, in *Glenn v. Express Co.,* 170 N. C., 286, that intoxicating liquors are within the scope of the police power, and a statute was sustained as a valid exercise of that power which forbids the delivery of more than one quart of intoxicating liquors each fifteen days, although intended for personal use.

Statutes providing for the forfeiture and destruction of intoxicating liquors illegally kept have been uniformly sustained (*Kirkland v. State,* 2 A. and E. Anno. Cases, 245), and the authorities go further, and hold that animals and conveyances used in the illegal traffic are the subject of forfeiture, 22 Cyc., 1681; *U. S. v. Two Bay Mules,* 36 Fed., 84; *U. S. v. Two Horses,* 28 Fed. Cases, No. 16578; *U. S. v. One Black Horse,* 129 Fed., 167; *Mugler v. Kansas,* 123 U. S., 623.

The names of the cases cited from the Federal Reporter (*U. S. v. Two Bay Mules,* etc.) are significant, and go far to illustrate the principle upon which the courts proceed, and upon which *Daniels v. Homer,* 139 N. C., 219, was decided, that the property being used for an illegal purpose is the offender.

Applying these principles to chapter 197, Public Laws 1915, and considering it in connection with the policy of the State in favor of prohibition, we have no doubt that it is a valid exercise of the police power.

We must, however, go further, and see whether the act purports to deal with the property rights of innocent parties, and to declare a forfeiture against one who has done no wrong.

The rule of construction controlling when a forfeiture is claimed is well established.

*Lord Holt* said in *Calloday v. Pilkington,* 12 Mod., 513: "Let a statute be ever so charitable, if it gives away the property of the subject it ought not to be countenanced"; and the Supreme Court of the United States in *Farmers Bank v. Dearing,* 91 U. S., 29: "Forfeitures are not favored in the law. Courts always incline against them."

In Sutherland Statutory Construction, 547, the rule is stated to be that "Statutes are construed strictly against forfeiture. A statute which subjects one man's property to be affected by, charged, or forfeited for the acts of another, on grounds of public policy, should be strictly construed; it cannot be done by implication."

The authorities in our State are to the same effect.

The Court said in *Smithwick v. Williams,* 30 N. C., 268: "Penal statutes cannot be extended by equitable construction beyond the plain import of their language"; in *Coble v. Shoffner,* 75 N. C., 43: "There is no question but that a statute prescribing a forfeiture of all interest is a penal statute, and is to be construed strictly. It cannot be construed by implication, or otherwise than by express letter. It cannot be extended, by even an equitable construction, beyond the plain import of its language"; and in *McGloughan v. Mitchell,* 126 N. C., 683: "It is a well settled rule that penal statutes must be strictly construed. They will receive no equitable construction beyond their plain language."

In the *Freight Discrimination Cases,* 95 N. C., 437, the Court also defined the term "strict construction" as follows: "It is an old but not very precisely defined rule of law that penal statutes must be construed strictly. By this is meant no more than that the Court in ascertaining the meaning of such a statute cannot go beyond the plain meaning of the words and phraseology employed in search for an intention not certainly implied by them. If there is no ambiguity in the words or phraseology, nothing is left to construction—their plain meaning must not be extended by inference, and when there is reasonable doubt as to their true meaning the Court will not give them such interpretation as to impose the penalty. Nor will the purpose of the statute be extended by implication so as to embrace cases not clearly within its meaning. If there be reasonable doubt arising as to whether the acts charged to have been done are within its meaning, the party of whom the penalty is demanded is entitled to the benefit of that doubt. The spirit of the rule is that of tenderness and care for the rights of individuals, and it must always be taken that penalties are imposed by the legislative authority only by clear and explicit enactments; that is, the purpose to impose the penalty must clearly appear. Such enactments, as to their words, clauses, several parts and the whole, must be construed strictly together, but as well, and as certainly in all respects, in the light of reason."

Let us, then, examine the statute, keeping before us the principle that, while the language used must receive a reasonable and not a strained construction, no case is within the statute that is not embraced by its terms.

The first section of the act requires the officer who seizes intoxicating liquors unlawfully held or possessed, "to seize and take into his custody

any vessel, boat, cart, carriage, automobile, and all horses and other animals or things used in conveying, concealing, or removing such spirituous, vinous, or malt liquors, and safely keep the same until the guilt or innocence of the defendant has been determined upon his said trial for the violation of any such law making it unlawful to so keep in his, their, or its possession any spirituous, vinous, or malt liquors; and upon conviction of a violation of said law said defendant shall forfeit and lose all right, title, and interest in and to the said property so seized."

The second section provides for the sale of property seized when no person is arrested, and the third for the distribution of the proceeds of sale. No forfeiture is declared and no property is subjected to confiscation when an arrest is made as in this case, except by the language quoted from the first section of the act, and this restricts and limits the forfeiture to the right, title, and interest in the property of the defendant who has been convicted.

The operative and material part of the statute is, "and upon conviction of a violation of said law said *defendant shall lose all right, title, and interest in and to the property so seized,*" and as this confines the forfeiture to the right, title, and interest of the defendant, we are without power to extend its terms and embrace the right, title, and interest of the plaintiffs, mortgagees, who were not defendants and who have had no connection with the illegal conduct of the defendant. The language of the second and third sections of the act is somewhat broader than that used in the first section, but as we have seen, the second section only deals with the sale of property *when no person is arrested,* and the third with the distribution of the proceeds of sale, and cannot be held to extend the forfeiture in the first section beyond its terms.

The distinction between the case before us and the Federal cases cited by the defendant (*U. S. v. Two Bay Mules,* 36 Fed., 84; *Distillery v. U. S.,* 96 U. S., 395; *U. S. v. One Black Horse,* 129 Fed., 167; *U. S. v. Two Horses,* Fed. Cases, No. 16578; *U. S. v. Distillery,* Fed. Cases, No. 14963) is clear, as the Federal cases are based on statutes which declare *the property* forfeited, while our statute only confiscates *the right, title, and interest of the defendant in the property.*

The decision in *Daniels v. Homer, supra,* is upon the same ground, the statute then before the Court declaring that the *nets* used illegally, and not *the interest of the defendant in the nets,* should be forfeited.

The case of *Felia v. Belton,* 170 N. C., 112, also relied on, has, we think, no bearing on the right of the plaintiffs to maintain this action. That action was brought to recover 40 gallons of wine received unlawfully by the plaintiff, who was tried and convicted, and in the criminal action the wine was confiscated. It was also found as a fact in the civil action that it was the purpose of the plaintiff to use the wine, if per-

mitted to recover it, in violation of ch. 97, sec. 7, Laws 1915, regulating the serving of drinks with meals.

The court properly held that the plaintiff could not recover because the property—the wine—had been received illegally and was declared forfeited in the criminal action, to which he was a party, and further because of his purpose to use the property in violation of law; and all of these elements, weighing against the right of the plaintiff, are absent from this record.

The plaintiffs in this action have been convicted of no offense; they have had no intoxicating liquors in their possession; they have neither been engaged in nor encouraged dealing in liquors; they are innocent of any unlawful conduct or illegal intent, and if their property right can be destroyed on account of the acts of another under a statute which only forfeits the right, title, and interest of the defendant who has been convicted, upon the same principle the horse and buggy and wagon and team lent to a neighbor for a legitimate purpose may be lost to the innocent owner if the borrower uses it in the unlawful transportation of liquor without the knowledge or consent of the owner.

Upon the whole record we are of opinion there is no error.

Affirmed.

CLARK, C. J., dissenting: The public policy of a State is declared, ordinarily, by its Legislature, sometimes by a Convention in framing its Constitution, and sometimes by a *Referendum* to the people at the ballot box. It was in the latter method that Prohibition was declared to be the public policy of this State. It has, therefore, the dignity of a constitutional provision, though it is not in the Constitution.

The statute now in question was adopted to carry out and make more effective this policy. The violation of the statute by intoxicating liquors being brought across the State line from Virginia became notorious, and it was utterly impossible to enforce the law unless this were prevented. Hence the enactment of a statute not merely punishing the individual who should thus violate the law, but forfeiting the automobile or other conveyance by which the liquor was brought in. This has long been the policy of the United States Government in dealing with illicit distillery and sale. Property thus illegally used would be forfeitable at common law *ipso facto* without a statute.

The material parts of chapter 197, Public Laws 1915, *i. e.,* sections 1 and 3, read as follows: "If any person shall have in his possession any spirituous liquors in violation of any State law now existing, the sheriff or other officer of any county, city, or town who shall seize such liquors as provided by chapter 44, Public Laws 1913, or by any other authority provided by law, is hereby authorized and required to seize and take into his custody any automobile used in con-

veying, concealing, or removing such spirituous liquors, and safely keep the same until the guilt or innocence of the defendant has been determined upon his said trial for the violation of any such law making it unlawful to so keep in his possession any spirituous liquors, and upon conviction of a violation of said law said defendant shall forfeit and lose all right, title, and interest in and to the property so seized; and it shall be the duty of the sheriff having in his possession said automobile to advertise and sell same under the laws governing the sale of personal property under execution. The proceeds derived from the sale of such property after paying for the reasonable expenses of such sale shall be paid by the sheriff to the county treasurer, and be applied by the treasurer to the credit of the public school fund of the county." This act was passed by the Legislature by virtue of the police power vested in it, and is in analogy to those statutes authorizing police officers to summarily destroy gaming tables, etc. (sections 3720, 3722, and 3723 of the Revisal), and authorizing the fish commissioner to seize and sell all nets setting in violation of the fishing laws.

The United States Government began stocking our waters with young fish, which after a definite period return to the rivers in which they originate. Certain parties adopted the custom of setting their nets in such a way as to prevent the return of the fish up the rivers, and thus confiscated to their own use the benefits which the Government had intended for the public. To prevent this the State forbade the nets being thus used, and provided as a part of the penalty the forfeiture of the nets, using almost exactly the same words as in section 2 of this statute, that the officers should "seize and remove all nets or other appliances setting or being used in violation of this act, sell the same at public auction, and apply proceeds of sale to payment of costs and expenses of such removal, and pay any balance remaining to the school fund of a county nearest to where the offense is committed." This Court sustained this statute in *Daniels v. Homer,* 139 N. C., 219, which has since been cited as authority, *Daniels v. Homer,* 146 N. C., 275; *S. v. Blake,* 157 N. C., 609. *Daniels v. Homer, supra,* was based upon *Lawton v. Steele,* 119 N. Y., 226, affirmed on writ of error, 152 U. S., 133, which has ever since been held as authority.

Indeed, the plaintiff does not deny the right of the State to confiscate conveyances used for this illegal purpose, but rests his case upon the wording of the statute. The statute is almost a verbatim copy of section 2 of the statute construed in *Daniels v. Homer* and of the Federal statute on the subject. Laws 1915, ch. 197, sec. 2, after providing that "the sheriff or other officer shall seize the forbidden liquor," provides that if he fail to capture or arrest the owner, or party in possession, so using the vessel, boat, automobile, horse, and so forth, he shall advertise for the owners to come forward and institute proper proceedings to secure

possession of said property, and "upon the failure of such person to come forward—if an individual, in person—and make such claim within thirty days after such notice shall have appeared in at least one issue of some newspaper published in the county where such seizure was made, and after such notice and time the sheriff shall advertise such property so seized for sale, and sell as provided in section 1 of this act," and section 3 provides that the net proceeds derived from the sale of such property shall be paid into the county treasury to the credit of the public school fund.

The parties engaged in bringing the liquor across the State line were convicted and did not appeal, and the automobile was ordered confiscated by the trial court as provided by the law above, and was advertised for sale at public auction. The plaintiffs now bring this action of claim and delivery of the automobile against the defendant, who holds the same by order of a court of competent jurisdiction, on the ground that they hold a mortgage thereon. The plaintiffs cannot thus get possession of the property, which is *in custodia legis. Santa Felia v. Belton,* 170 N. C., 112, which is exactly in point. The remedy was by motion in the cause. There the liquor was confiscated, and it was held the owner could not recover it by claim and delivery from the officer.

If a party engaged in the illegal traffic of bringing intoxicating liquors across the State line can protect himself by putting a mortgage on the conveyance or team used by him, then this device will be a complete nullification of that part of the statute which the General Assembly enacted for its prevention by confiscating the conveyance or team used.

The same defense as here has often been attempted to be set up in the Federal Court in cases of the confiscation of conveyances and teams used for carrying liquors on which the tax had not been paid. In *U. S. v. Two Bay Mules,* 36 Fed., 84, *Dick, J.,* in the United States District Court of North Carolina held that "Animals and conveyances used in removing spirituous liquors to evade payment of the tax are subject to be forfeited, though used by a person who had hired them from the owner representing that they would be used for another purpose," the Court saying: "When property becomes liable to forfeiture, under the positive provisions of a statute, owners who have in no way participated in the frauds which caused the forfeiture must seek redress from the wrong-doers who unlawfully use the property with which they were intrusted; or they can apply to the officer of the Government invested with the authority to remit forfeitures." *Judge Dick* then went on to give the reason as follows: "This proceeding is *in rem;* the mules and wagon are considered the offenders, and are liable to forfeiture without any regard whatsoever to the personal misconduct or responsibility of the owner."

*Judge Dick* cited as authority *Distillery v. U. S.*, 96 U. S., 395, which fully sustained his views and which cited divers cases. In that case the United States Supreme Court held that where the owner of property leased it for the purpose of distilling, which was a lawful purpose, but the lessee in carrying on the business of the distillery defrauded the revenue, though this was unknown to the owner, the distillery and the property connected therewith was forfeited to the Government. This case cites many others and has been cited by many since, to be found in 8 Rose's Notes, 458, and later cases in the Supplements to Rose's Notes.

In *U. S. v. One Black Horse*, 129 Fed., 167, the Court held that a vehicle and horse owned and let by a liveryman, used in smuggling liquor across the line into the United States was subject to seizure and forfeiture, though the liveryman who owned them had no knowledge of the purpose for which the team and vehicle was to be used. This case cites *U. S. v. Two Bay Mules, supra,* saying: "In this case, as in that, the redress of the innocent claimant must be from the wrong-doer himself, or by application to the officers of the Government invested with authority to remit forfeitures."

In *U. S. v. Two Horses,* Fed. Cases, No. 16578, it was held: "Knowledge or intent on the part of the owner of a conveyance used in transporting spirits subject to tax that are being removed contrary to law is not required to be shown in order to a forfeiture of such conveyance," citing many cases to the same effect. Among others, *U. S. v. Distillery,* Fed. Cases, No. 14963, in which *Judge Woodruff* remarked: "It is expected that the owner of property will see to the use that is made of it, at his peril."

The same reasoning was used in *Daniels v. Homer,* 139 N. C., 223, which referred to the common law under which any personal chattel that even accidentally caused the death of a human being was forfeited and sold and the proceeds distributed to the poor, or like a deodand under which a weapon used in killing a human being was likewise forfeited, whether it belonged to the murderer or not, 1 Bl. Com., 300, or the case of a town ordinance which authorized hogs running at large to be impounded and sold for the penalty, *Rose v. Hardie,* 98 N. C., 44; and the ordinance which authorized a dog to be killed for failure to pay tax, *Mowery v. Salisbury,* 82 N. C., 175.

Among many State cases is *Boggs v. Commonwealth,* 76 Va., 994, sustaining the forfeiture of a vessel whose lessee violated the oyster law of that State, though without the knowledge or consent of the owner.

The law is thus summed up in 22 Cyc., 1643: "All personal property employed in the business of illicit distilling is subject to forfeiture, irrespective of ownership." In same volume, at p. 1681, it is said: "In addition to the penalties imposed upon persons who remove or conceal

goods upon which the tax has not been paid, with intent to defraud, all conveyances and animals used in the accomplishment of this unlawful purpose are forfeitable. Knowledge or intent on the part of the owner of a conveyance to use it illegally is not required to be shown. The conveyance and animals are considered the offenders, and are liable without regard to the misconduct or responsibility of the owner. Innocent owners of property forfeited must obtain redress from those who were intrusted with the property and use it unlawfully or by application to the officers of the Government who have been invested with authority to remit forfeitures," citing many authorities in the notes.

The authorities are thus practically uniform that when property is used in violation of law it is subject to forfeiture, although the owner had no knowledge of the purpose. The procéeding is *in rem* against the property which has been devoted to an illegal purpose. These decisions are nearly all in cases where the owner had rented the property to the person thus using it illegally, and without knowledge on the part of the owner that it was to be so used. The case is much stronger here because the owner of the property was the violator of the law himself; and the plaintiff had merely a claim on it as a security for debt. The right of the Government to the forfeiture against the owner is prior to the lien of the mortgagee, just as a tax due upon the property takes priority of a mortgage. The Government's right to forfeit property, like its right to the tax, is against the property, and since the forfeiture takes priority over an innocent lessor, it is certainly good against a mortgagee who leaves it in the hands of the owner himself, who has devoted it to an illegal purpose. If the mortgagee can thus protect conveyances used to violate the law, then confiscation would become a nullity by this easy device of always using property on which a mortgage or lien has been given to some one else.

As has been said by the United States Supreme Court, *supra,* and in the other cases above cited, "The recourse of the owner whose property is thus forfeited is against the wrong-doer." It is his own fault that he has leased it to a person who has used it in defiance of the law. For a stronger reason the mortgagee here cannot claim exemption of the property from liability to the State, for he could have taken possession of the property under his mortgage, and it was by his consent that the mortgagor remained in possession and was enabled to use it for an unlawful purpose. Practically, the mortgagor in possession was the agent of the mortgagee, and the mortgaged property is liable for the illegal use made of it.