### SOUTH GEORGIA MOTOR COMPANY v. GEORGE C. JACKSON, SHERIFF.

(Filed 8 November, 1922.)

**Intoxicating Liquors—Spirituous Liquors—Transportation—Automobiles —Forfeitures—Mortgages—Registration of Instruments.**

C. S., 3403, creating a forfeiture of an automobile used in the unlawful transportation of intoxicating liquors, and providing for its sale, etc., by its express terms relates only to the interest therein of the violator of the law upon his conviction, and cannot be extended by legal construction to include the interest of a mortgagee of the automobile who is entirely ignorant and innocent of the unlawful act of which the defendant has been convicted; nor will the failure of registration of the mortgage affect the matter under our registration laws enacted for the protection of creditors and purchasers for a valuable consideration, etc.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Cranmer, J.,* at April Term, 1922, of NEW HANOVER.

Civil action, tried upon an agreed statement of facts. Judgment was entered for the defendant, and the plaintiffs excepted and appealed.

The substance of the facts agreed is as follows:

1. The plaintiffs are residents of the city of Savannah, Ga., and co-partners engaged in the business of selling automobiles under the general name of South Georgia Motor Company.

2. On 14 February, 1920, the plaintiffs sold to Christos N. Christakos and Chan Mavrikis a Cadillac touring car at the price of $2,000, the defendants paying $500 in cash and giving their joint promissory note for $1,500, payable thirty days after date. To secure the deferred payment, the purchasers gave the plaintiffs a mortgage on the car, which was registered on 25 September, 1920, in Chatham County, Georgia.

3. On 21 September, 1920, said Mavrikis was arrested and imprisoned in the city of Wilmington for the illegal transportation in said car of intoxicating liquor. He was operating the car at the time of his arrest contrary to the laws of the State and the United States. The defendant seized the automobile, and Mavrikis afterward gave a bond for his appearance on 28 September, but forfeited his bond, did not appear, and has never been tried on the offense charged. Judgment absolute was rendered on the appearance bond, and the automobile was condemned by the recorder's court, and afterward the sheriff, under the direction of the court, advertised it for sale in accordance with the statute.

4. Plaintiffs, who held the mortgage for $1,500, had no knowledge that Christakos or Mavrikis intended to use the car for the illegal transportation of liquor or other violation of the law, and had no knowledge of such violation until after Mavrikis was arrested.

5. No part of the mortgage for the $1,500 has been paid, and Mavrikis and Christakos are both insolvent.

6. The market value of the automobile at the time of the seizure was $1,250.

7. The mortgage was executed on 14 September, 1920, but was not recorded by the plaintiffs until a few days after the arrest of Mavrikis in the city of Wilmington.

*K. O. Burgwyn for plaintiffs.*
*Rountree & Carr for defendant.*

ADAMS, J. The plaintiffs admit that the statute providing for the confiscation or forfeiture of an automobile operated in the unlawful transportation of intoxicating liquor is a valid exercise of the police power (*Daniels v. Homer,* 139 N. C., 219), but they deny that the statute

is broad enough to include the interest which they claim in the condemned car by virtue of their mortgage. It will be noted that the mortgage was executed on 14 September, and registered on 25 September, four days after the arrest of Mavrikis.

"If any person . . . shall have in possession any spirituous . . . liquors in violation of law, the sheriff, . . . who shall seize such liquors by any authority provided by law, is authorized and required to seize and take into his custody any . . . automobile . . . used in conveying, concealing, or removing such spirituous liquors, and safely keep the same until the guilt or innocence of the defendant has been determined upon his trial, . . . and upon conviction of a violation of the law, the defendant shall forfeit and lose all right, title, and interest in and to the property so seized; and it shall be the duty of the sheriff having in possession the automobile so used . . . to advertise and sell the same under the laws governing the sale of personal property under execution." C. S., 3403. This statute was construed and the rights of a mortgagee were discussed in *Skinner v. Thomas,* 171 N. C., 103. In that case it was said: "The operative and material part of the statute is, 'and upon conviction of a violation of said law said defendant shall lose all right, title, and interest in and to the property so seized,' and as this confines the forfeiture to the right, title, and interest of the defendant, we are without power to extend its terms and embrace the right, title, and interest of the plaintiffs, mortgagees, who were not defendants, and who have had no connection with the illegal conduct of the defendant. The language of the second and third sections of the act is somewhat broader than that used in the first section, but as we have seen, the second section only deals with the sale of property when no person is arrested, and the third with the distribution of the proceeds of sale, and cannot be held to extend the forfeiture in the first section beyond its terms.

"The distinction between the case before us and the Federal cases cited by the defendant (*U. S. v. Two Bay Mules,* 36 Fed., 84; *Distillery v. U. S.,* 96 U. S., 395; *U. S. v. One Black Horse,* 129 Fed., 167; *U. S. v. Two Horses,* Fed. Cases, No. 16578; *U. S. v. Distillery,* Fed. Cases, No. 14963) is clear, as the Federal cases are based on statutes which declare the property forfeited, while our statute only confiscates the right, title, and interest of the defendant in the property.

"The decision in *Daniels v. Homer, supra,* is upon the same ground, the statute then before the Court declaring that the nets used illegally, and not the interest of the defendant in the nets, should be forfeited."

It is argued that in the case at bar the plaintiffs' mortgage was not registered. Nor does it appear that the mortgage referred to in *Skinner's case, supra,* was registered. There is nothing to indicate registra-

tion in the statement of the case, in the briefs of counsel, or in the opinion of the Court. Besides, the statutes providing for the registration of mortgages are intended primarily to protect creditors and purchasers, and not to attach to the instrument additional efficacy as between the mortgagor and the mortgagee. In *Williams v. Jones,* 95 N. C., 505, *Ashe, J.,* said: "By The Code, sec. 1254, it is declared that 'no deed of trust or mortgage for real or personal estate shall be valid at law to pass any property as against creditors and purchasers for a valuable consideration from the donor, bargainor, or mortgagor, but from the registration of such deed of trust or mortgage,' etc.

"Prior to the passage of this act, a mortgage was valid even against creditors and purchasers, and it was required to be registered for their benefit. But as between the parties, their rights were undisturbed by the act, and they are left as they existed before its passage.

"There is no principle better settled than that, as between the parties, a mortgage is valid without registration. *Leggett v. Bullock,* 44 N. C., 283."

It is contended that the Court's construction of the statute in *Skinner v. Thomas, supra,* affords such opportunity for collusion as will destroy the purpose of the law in its practical operation. But we cannot accept such possibility as a ground for extending the terms of the statute to cases not within the contemplation of the Legislature; it is our duty to declare the law, not to make it. *S. v. Johnson,* 181 N. C., 640. In the instant case, however, the defendant admits that the plaintiffs were not in criminal collusion with the purchasers of the car.

Upon a review of the record, we think the judgment should be

Reversed.

CLARK, C. J., dissenting: This case comes up on an agreed state of facts. On 14 September, 1920, the plaintiff, in Chatham County, Georgia, sold to Christos N. Christakos and Chan Mavrikis a Cadillac automobile, which is duly described, for the sum of $2,000. The purchasers paid $500 in cash for the property and gave their joint promissory note for $1,500. This was a conditional sale, as to which the failure to register has the same effect as the failure to register a mortgage. C. S., 3312. The vendor did not record this instrument in Georgia until 25 September, after the purchasers had been arrested on 21 September for transporting intoxicating liquor in said automobile, and after the said automobile had been seized and held by the sheriff of New Hanover for their violation of the laws of this State.

The question presented is whether the action of the vendor in recording the conditional sale subsequent to the legal seizure here under due process of law, for violation of the law of this State can divest the lien which the State acquired by the seizure.

MOTOR CO. *v.* JACKSON.

The statute, C. S., 3403, provides that when the law is violated which prohibits the keeping or having "in possession any spirituous, vinous, or malt liquors in violation of law, the sheriff or other officer of any county, city, or town who shall seize such liquors by any authority provided by law, is hereby authorized and *required* to seize and take into his custody any vessel, boat, cart, carriage, automobile, and all horses or other animals or things used in conveying, concealing, or removing such spirituous, vinous, or malt liquors, and safely keep the same until the guilt or innocence of the defendant has been determined upon a trial for the violation of any such law making it unlawful to so keep in possession any spirituous, vinous, or malt liquors, and upon conviction of a violation of the law, the defendant shall forfeit and lose all right, title, and interest in and to the property seized, and it shall be the duty of the sheriff having in possession the vessel, boat, cart, carriage, automobile, and all horses and other animals or things so used in conveying, concealing, or removing such spirituous, vinous, or malt liquors, to advertise and sell the same under the laws governing the sale of personal property under execution."

The validity of statutes forfeiting property used in violation of the statute has been often sustained. In this Court this was upheld in *Daniels v. Homer,* 139 N. C., 219, which has been since cited as authority in *Daniels v. Homer,* 146 N. C., 275; *S. v. Blake,* 157 N. C., 609, and *Skinner v. Thomas,* 171 N. C., 98. *Daniels v. Homer, supra,* was based upon *Lawton v. Steele,* 119 N. Y., 226, which on writ of error was affirmed, 152 U. S., 133, and has ever since been upheld as the unquestioned authority as to the validity of such statutes. Indeed, in numerous United States authorities it has been held that property so used is forfeited, even when it is not the property of the party having the property in possession, and the illegal use is without the knowledge of the true owners. This, of course, forfeits the property even when there is a registered mortgage thereon. Many of these cases are cited in *Skinner v. Thomas,* 171 N. C., at pp. 106-107. The principle laid down in these cases is thus stated: "Animals and conveyances used in removing spirituous liquors to evade payment of the tax are subject to be forfeited though used by a person who had hired them from the owner representing that they would be used for another purpose. . . . When property becomes liable to forfeiture under the positive provisions of a statute, owners who have in no way participated in the frauds which caused the forfeiture must seek redress from the wrongdoers who unlawfully used the property with which they were entrusted or they can apply to the officers of the Government invested with the authority to remit forfeitures. . . . This proceeding is *in rem;* the mules and wagons are considered the offenders, and are liable to forfeiture without

any regard whatsoever to the personal misconduct or responsibility of the owners." If this were not so, the forfeiture could be so easily evaded that the statute would become practically unenforceable.

Indeed, the law is thus summed up in 22 Cyc., 1643: "All personal property employed in the business of illicit distilling is subject to forfeiture, irrespective of ownership"; and in same volume, at p. 1681, it is said: "In addition to the penalties imposed upon persons who remove concealed goods upon which the tax has not been paid with intent to defraud, all conveyances and animals used in the accomplishment of this unlawful purpose are forfeitable. Knowledge or intent on the part of the owner of a conveyance to use it illegally is not required to be shown. The conveyance and animals are considered the offenders, and are liable without regard to the misconduct or responsibility of the owner. Innocent owners of property forfeited must obtain redress from those who were entrusted with the property and used it unlawfully or by application to the officers of the Government who have been invested with authority to remit forfeitures." The notes to that summary of the law show that the authorities are practically uniform that when property is used in violation of law it is subject to forfeiture, although the owner has no knowledge of the purpose. The proceeding is *in rem* against the property which has been devoted to an illegal purpose.

It is claimed in this case that under our statute above cited, which makes forfeitable all right, title, and interest in the property seized, the wrongdoer can protect himself by the device of hiring the property or placing a mortgage thereon. This would be practically a nullification of all means of enforcing the law in such cases, but the defendants rely upon the decision in *Skinner v. Thomas,* 171 N. C., 98. It is true that it does not appear in that case that the mortgage was recorded at the time of the "seizure" of the property under process of law, but it is admitted by the briefs on both sides in this case that in *Skinner v. Thomas, supra,* the mortgage was in fact recorded.

In this case it affirmatively appears that the mortgage was *not* registered at the time the property was "seized" for the penalty due the State, and the question now presented to us for the first time is whether when the mortgage is not registered, the mortgagee can exempt the property from liability denounced by the statute by subsequently recording the mortgage. The question has been clearly settled against the claims of the holder of the subsequently registered mortgage at this term in the case of *Hardware Co. v. Garage Co., ante,* 125, in which the opinion was filed on 27 September, 1922, and in which it was held: "A chattel mortgagee has no lien upon the automobiles and trucks unless registered at the time of the appointment of a receiver for the debtor in whose possession they were."

MOTOR CO. *v.* JACKSON.

The right, title, and interest in the property under the unregistered mortgage passed as absolutely to the State upon the seizure of the automobile for violation of the law as it passed to the receiver under the appointment of the court under a direction to hold the same for the benefit of the general creditors. In that case the Court said: "The automobiles and trucks embraced in the order appointing the receiver passed the property to him for the benefit of the general creditors and the holder of the unregistered mortgage was held to have acquired no lien upon them nor upon the proceeds by the subsequent registration of the mortgage. *Starr v. Wharton,* 177 N. C., 324."

Both these cases quote *Observer Co. v. Little,* 175 N. C., 42, as decisive of this question, the Court there saying: "It is held further with us that after the proceeding is instituted and receiver appointed, no general creditor can on his own account take any separate or effective steps in furtherance of his claim," which in that case was attempted by the subsequent registration of a mortgage, and it was further said: "Under these conditions, it is in accord with right reason that a proceeding of this character and the appointment of a receiver thereunder shall be considered in the nature of judicial process by which the rights of general creditors are 'fastened upon the property' within the meaning of the principle and avoiding all claims for specific liens which have not obtained legal priority by having the same duly registered as provided and required by law; and well considered authority is in full support of the position," citing numerous authorities. Of course, there could pass to the receiver only the right, title, and interest of the debtor for whose property he was appointed receiver, but the Court explicitly held that by his appointment the lien for the benefit of creditors was fastened upon the property for the right, title, and interest as it then stood, and this could not be changed by the subsequent registration of any mortgage.

In the present case, by the highest authority, the statute itself, an authority certainly stronger than the decree of a court appointing a receiver, the lien of the law was "fastened upon this automobile," and it could not be divested by the subsequent registration of a mortgage or conditional sale. The State cannot be compelled to go into a controversy in all such cases over the question whether the mortgage subsequently registered was fraudulent and fictitious in order to divest the claim of the sovereign. It is very certain that men engaged in the business of violating the law should not be afforded opportunity to thus divest the lien acquired by a judicial seizure. If creditors cannot thus divest the lien acquired by the appointment of a receiver by the subsequent registration of a mortgage, those whose property has been seized by the Government for being used in violation of law cannot be afforded opportunity to defraud the Government, whose laws they are violating, by subsequently

registering mortgages and throwing upon the Government the almost impossible task of proving that such mortgages are not fraudulently executed, as well as recorded, subsequent to the seizure.

The proposition cannot be better stated than by *Hoke, J.,* in *Hardware Co. v. Holt,* 173 N. C., 310, where he thus says: "True, the receivers, unless otherwise provided in the order, did not properly assume control of the property until they had qualified. Certainly, they could make no authoritative disposition of it before that; but the language of the statute is that the property vests at the date of the appointment, and that the title of the corporation is divested at that date. The statute was evidently expressed in these explicit and peremptory terms with a view of insuring a distribution of the property under the conditions existent at the time of the appointment and to prevent a creditor from obtaining any advantage over another from and after that time, and it is therefore explicitly provided that from such date the corporation shall have no interest in the property on which a lien can be acquired."

In this case, the purchasers of the automobile, as against the world, had the full right, title, and interest to this property when it was seized by the State as forfeited under the statute. The fact that the seller of the machine still had a right in equity to acquire a lien as against the purchasers by recording his mortgage, in no wise affected the absolute right, title, and interest of the purchasers in the property until such mortgage was recorded. Until such registration, the property could have been sold by the purchasers, and an absolute title conveyed. Until such registration, the property could have been sold under an execution for debt against the purchasers, and the sheriff would have conveyed an absolute title. Until such registration, upon the appointment of a receiver, absolute title would have passed to him to hold the absolute title to the property, and this could not have been affected in any of these cases by any subsequent registration of a mortgage or conditional sale.

For further and stronger reasons, when the Government, to enforce the majesty of its violated laws, seizes property on which there has been no mortgage recorded, the absolute title, by virtue of that judicial proceeding, is vested in the State, to be held subject to the verdict of the jury as to the guilt of the defendant, and if found guilty, under the terms of the statute, the property should be sold and the proceeds turned into the school fund, as C. S., 3405, provides, and no subsequent registration of a mortgage can detract from the absolute title which passed to the Government by virtue of its seizure any more than a subsequent registration could affect the title acquired by sale of the property to an individual, or under execution, or its assignment by the appointment of a receiver, or in any other instance.

The seizure of the property for forfeiture, under C. S., 3403, is a judicial procedure, which made the State a "purchaser" under the terms of the registration act, C. S., 3311, and its title can be divested only by a verdict of acquittal and order of the court, C. S., 3403. The violation of the law subjecting the offender to a penalty, which is a debt, the State became a creditor when the violation occurred, and this debt has priority over any mortgage registered subsequent to such violation and by virtue of the seizure the State also became a purchaser of the title, subject to be divested only by acquittal or order of the court. Both as purchaser and creditor the State has priority over subsequently recorded liens.

Upon what reasoning can it be held that the title acquired by the Government in the exercise of the highest power, to enforce a penalty, or in seizing property under judicial proceedings, is less efficacious than the sale to another individual, or under execution, or by the appointment of a receiver?

A penalty for violation of law being a debt to the State, a seizure to enforce this collection takes precedence over a claimant under an unregistered mortgage as fully as under an attachment by any other creditor.

Not only is a fine, or a penalty due the State, a "debt," but it is a debt that has preference over judgments and other debts C. S., 93 (4), and even the homestead does not avail against it. *S. v. Davis,* 82 N. C., 610, and citations thereto in Anno. Ed. And as to forfeitures, a repeal of the statute conferring it will not affect any forfeiture, or rights accruing, prior to the repeal of the statute creating the forfeiture. C. S., 3948.