## Case No. 14,965.

### UNITED STATES v. DISTILLERY IN WEST FRONT STREET.

[2 Abb. (U. S.) 192;[1] 11 Int. Rev. Rec. 174; 18 Pittsb. Leg. J. 61; 4 Brewst. 246.]

District Court, D. Delaware. 1870.

REVENUE LAWS—VALIDITY OF PROVISIONS IMPOSING FORFEITURE.

An act of congress.—such as section 44 of the act of July 20, 1868 (15 Stat. 142), which

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

declares that real property employed in a violation of a revenue law shall be forfeited therefor,—is not unconstitutional. Such an act may be sustained as a regulation of civil policy appropriate to accomplish a purpose vital to government.

This was a libel of information to enforce a forfeiture.

HALL, District Judge. This is a case of libel of information on behalf of the United States in rem; that is to say, a distillery, being a brick building, 106 West Front street, Wilmington, and the lot of land on which the said distillery stands, and certain apparatus, &c., which John S. Prettyman, U. S. collector of internal revenue for this district, had seized as forfeited to the United States, according to section 44 of the act of congress "imposing taxes on distilled spirits," &c., of July 20, 1868.

The libel of information alleges that Archibald McKinley, being a person distilling spirits, on the —— day of ——, 1869, at the distillery aforesaid, did carry on the business of a distiller, with intent to defraud the United States of a part of the tax on the spirits distilled by him, contrary to section 44 aforesaid, and that Philip Plunket had right, title, and interest in the said lot of land on which the said distillery is situated, and did knowingly suffer and permit the business of a distiller to be carired on by the said Archibald McKinley, at the said distillery.

Archibald McKinley and Philip Plunket have appeared and claimed the property, and answered the information severally; Philip Plunket claiming the real estate (the distillery and lot of land on which it is situated, in which he says he has an estate in fee simple). The answer put in issue all the allegations in the libel of information. On trial before a jury, a general verdict has been found for the plaintiff.

It is thus established that Archibald McKinley, a distiller, did carry on the business of a distiller at the distillery before mentioned, situated on the afore-mentioned lot of land; that Philip Plunket had a right, title, and interest in the said lot of land, and did knowingly suffer and permit the said Archibald McKinley to carry on the said business of a distiller there, or, in the phraseology of the said section 44, "the said business of a distiller to be there carried on by him." Therefore, all the right, title, and interest of Philip Plunket in this distillery and lot of land, according to this section 44, was forfeited to the United States, and a decree of condemnation should be pronounced, according to the prayer of the libel of information.

It is objected to this, that this section 44, cannot have this effect upon the real estate of Philip Plunket, under the clauses of the constitution of the United States prohibiting the passing of a bill of attainder or forfeiting real estate, even for punishment of treason, except for life; arguing that the forfeiting real estate by the mere enactment of the

legislature, without offense or delinquency of the owner, is, in practical effect, a bill of attainder, certainly open to the same objection, and when the fundamental principle of our government will not allow forfeiture, except during life, for the highest crime, it certainly cannot be suffered for a misdemeanor.

In answer, it is obvious, to remark, that these clauses of the constitution of the United States have respect to high crimes, and punishment of them, restraining rigor, and guarding against arbitrarily enacting guilt. The case before the court is a civil suit in rem, against the thing, to ratify the seizure of it, and the provision of the act of congress under which it is alleged to be forfeited, and therefore was seized, is a regulation of civil policy, framed to secure to the United States fair payment of taxes imposed for the support of the government, a regulation of civil policy to accomplish a purpose vital to government; for without revenue the government cannot exist; and what measures may be requisite to enforce the collection of a tax, it is for congress, in the exercise of its legislative power, to determine. That power is not unlimited; but what are the objections to the provision upon which this case depends?

Certainly, congress can impose a tax on distilled spirits, and provide the processes and measures for collecting it; for preventing the government being defrauded of it; and what measure more obvious, germane, or suitable, than to make the defrauding of the tax cause of forfeiting the distillery (viz: the building and the lot of land on which it is situated), the provision under consideration.

The objection that would first occur would be, that the forfeiture is unreasonably large; but of this, congress is the rightful judge, and experience in this matter has guided to this provision. There is no objection; it is in natural course; it is common to make the use of a thing for an unlawful purpose, its employment in an injurious way, cause of its forfeiture. Carrying on the distilling business, with intention to defraud the government of the taxes on the spirits distilled, and actually defrauding it, the case before the court upon this verdict, so far from exhibiting the provision complained of as intolerable for hardship, commends it to a sense of justice and propriety. I can see no force in the protest against its action on real estate—fee simple in land.

Under the feudal system, all title to land was derived from the king, and held for doing service to him; and those holding from him granted to those under them, upon like tenure, doing service to them; the holders or tenants must all be choice men, in whom there was personal trust to perform the stipulated service—all controlling considerations of the grants, in those times of violence and war. But the tenants must hold the land in order to perform the service. The service was indispensable; hence the land was inalienable, the service being essentially personal; and the feudal system thus established principles of land tenure, which the nation, as it became commercial, had a constant struggle with—an interesting part of English history.

We have never adopted nor allowed like principles in our land tenure. Our earliest statutes, 1694 and 1700, make land liable to pay debts, when sufficient personal estate cannot be found; and it was not till about seventy years afterward, about 1770, that the regulation was made that, if the profits would pay the debt and interest in seven years, the land should not be sold, but delivered to the creditors on elegit, to be held till payment from the profits. This regulation does not affect the character of land in its liability for debt. It can be sold from the owner by adverse proceeding, in fee simple, for debt, for taxes, for a fine for an assault and battery upon a judgment of a justice of the peace; it is property, and subject, as property is subject, to answer demands which law makes upon it for the ends of justice.

As a further reason against construing and administering the provision of the act of congress upon which this case rests, according to its literal meaning, it is contended that it is in practical effect a bill of attainder, taking from Philip Plunket this real estate, by mere force of enactment, without offense or delinquency on his part.

I have already met this argument. I may add, further, this is not a proceeding against Philip Plunket; he has intervened in this case, making himself, of his own accord, a party. The proceeding is against this distillery, as a thing forfeited for being used as a means for carrying on the business of distilling spirits, with intent to defraud the United States of the tax on the spirits distilled; and the allegation informing Philip Plunket, who has made himself a party to the proceeding, why his property is forfeited, is, that he knowingly permitted the distiller who carried on this business to use this distillery. As the use was by his permission, he must abide the consequences.

The distillery is thus made, by this provision of the act, a pledge, to the amount of its value, that the business of distilling in it shall be carried on fairly, without intention to defraud the United States of the tax on the spirits distilled, or any part of it; and Philip Plunket, by knowingly permitting its use under this provision—and no man is allowed to plead ignorance of the law, and also the written instrument under his hand, according to the eighth section, attests his privity—consents to this; so that this view of the case comes to this point—that Philip Plunket, knowingly permitting this property to be used as a distillery, subjects it to be security for the fair carrying on of the business. This is the scope of the provision, and there can be no objection to it.

Let there be a decree of condemnation in the usual form.