STATE OF NEBRASKA, APPELLEE, v. JONES-HANSEN CADILLAC
COMPANY, APPELLANT.

FILED MARCH 27, 1919.  No. 20864.

1. Intoxicating Liquors: PROHIBITORY LAWS: CONSTRUCTION. The pur-
pose of chapter 187, Laws 1917, is declared to be "for the im-
mediate preservation of the public peace, health and safety."
Section 58. Such legislation must be liberally construed in fur-
therance of the high moral purposes aimed at.

2. ———: ———: ———: FORFEITURES. In ascertaining the legisla-
tive will, it must be borne in mind that forfeitures are not favored
in the law, and even this statute must not be construed to for-
feit the property of innocent citizens, unless, from the statute
in the light of its object and existing conditions, it is manifest
that the legislature considered such forfeiture necessary for the
"preservation of the public peace, health and safety." .

3. ———: TRANSPORTATION: AUTOMOBILES: NUISANCE. An automobile
used in the unlawful transportation of liquors is declared to be
"a common nuisance and may be abated as in this act provided."
Section 42.

4. Nuisance: ABATEMENT: INTOXICATING LIQUORS. Sections 28 to 33,
relating to buildings or places where liquors are kept for sale
or for some unlawful purpose, define a nuisance, and declare that
such nuisance shall be abated by an action in equity, and that
personal property which is condemned shall be sold and the "pro-
ceeds of the sale of the personal property * * * shall be
applied in payment of the costs of the action and abatement, and
the balance, if any, shall be paid to the defendant."

5. Intoxicating Liquors: TRANSPORTATION: NUISANCE. The provision
in regard to the unlawful transportation of liquors also declares
that a vehicle so used is a nuisance, and that such nuisance shall
be abated as in this act provided.

6. ———: ———: CONFISCATION OF AUTOMOBILE: RIGHTS OF MORT-
GAGEE. Under these provisions, if an automobile so used is de-
clared a nuisance, it must be disposed of as so provided, and the
interest of the owner or mortgagee who has notice of such un-
lawful use thereof must be sold and the proceeds applied as
provided in section 33 of the act.

APPEAL from the district court for Cass county:
JAMES T. BEGLEY, JUDGE. Reversed.

Neb. 103.—23.

*Kennedy, Holland, DeLacy & Horan,* for appellant.

*A. G. Cole, contra.*

SEDGWICK, J.

The defendant company, a dealer in automobiles, sold an automobile to one Ford for $3,350. Ford paid $1,000 of this purchase price in cash, and gave the defendant a chattel mortgage on the automobile for the remaining $2,350, payable $250 per month. Soon afterwards Ford delivered the car to one Finsod, who used it in illegally transporting intoxicating liquors into this state. Within about two weeks after the automobile was sold by the defendant to Ford, Finsod was arrested for a violation of the prohibition laws, and the automobile was seized. Finsod pleaded guilty, and was fined by the county court of Cass county, and an order entered that the automobile "be sold at public sale on ten days' notice and the proceeds thereof paid into the school fund, as provided by law." The defendant had no notice that Ford intended to use or allow the automobile to be used unlawfully, or that it was being so used by Finsod, and claimed an interest in the automobile by virtue of the chattel mortgage. This action was then begun in the district court for Cass county by the county attorney in the name of the state, alleging that "said motor vehicle became a common nuisance when it was used for transportating (transporting) intoxicating liquor as above set forth and immediately became the absolute property of the plaintiff free and clear of all incumbrances of every nature and kind," and asking that "defendant's lien be canceled, and that plaintiff's title to said motor vehicle be quieted against the claim of the defendant, and for such other relief as to the court may seem proper." The defendant answered, alleging the lien, and that the mortgage was taken in good faith, and asked that "the court find that said notes and mortgages above stated constitute and are a first lien upon said

property, and order and direct the plaintiff above named to sell the said car subject to the lien of this defendant." The court found in favor of the plaintiff, canceled the defendant's mortgage, and decreed that the automobile be sold and the proceeds paid over to the school fund of the county, and the defendant has appealed.

After the adoption of the prohibitory amendment of the Constitution, the legislature enacted a comprehensive statute of 60 sections (Laws 1917, ch. 187), the purpose of which is to prevent the manufacture and sale of intoxicating liquors in this state, and to discourage, and as far as practicable prevent, the use of intoxicating liquors as a beverage, or for any purpose other than those specifically named in the statute, and to that end to prevent the unlawful importation of intoxicating liquors into this state.

The able and exhaustive briefs of counsel, which have been of great assistance to the court, are principally devoted to a discussion of the intention of the legislature and the meaning of the statute as to the question herein involved.

The purpose of this important statute is not only to prevent intoxication, but also to do away with the manufacture and sale of liquors for beverage purposes, and to discourage, and, as far as practicable, to prevent its use for any other purposes than those expressly permitted by the statute. Such legislation must be liberally construed in furtherance of the high moral purposes aimed at. Indeed, the statute so expressly provides: "The legislature hereby declares this act to be for the immediate preservation of the public peace, health and safety, and all its provisions shall be liberally construed for that purpose." Section 58.

But, in ascertaining the legislative will, it must be borne in mind that forfeitures are not favored in the law, and even this statute must not be construed to forfeit the property of innocent citizens, unless, from

the statute itself in the light of its object and existing conditions, it is manifest that the legislature considered such forfeiture necessary for the "preservation of the public peace, health and safety."

The statute deals with three different phases of the evil aimed at: First, the buildings or places where liquors are kept for sale or for some unlawful purpose; second, the liquors themselves, "together with the vessels containing it and any other personal property actually and directly used in connection therewith" (section 41); and, third, "the unlawful transportation of intoxicating liquors" (section 42). Sections 28-40 relate to "buildings, tenements, or places where intoxicating liquors are manufactured, sold, stored, kept for sale, or barter, or given away in violation of law, or where persons resort for purposes of drinking intoxicating liquor as a beverage, and all such intoxicating liquors, bottles, lockers, glasses, jugs, kegs, pumps, bars, containers, fixtures and other property used in maintaining such place, contrary to law or in violating any provisions of this act." These are "declared to be common nuisances, and may be penalized, abated, and enjoined as hereinafter provided." Section 28.

Section 41 considers the liquors themselves, and provides for a search of suspicious places under a warrant issued upon complaint of an officer or "credible resident freeholder;" and, if intoxicating liquor is found, it is to be seized, "together with the vessels containing it and any other personal property actually and directly used in connection therewith." If a person is found in possession of the liquors, "final judgment of conviction in such proceedings shall be in all cases a bar to any suits for the recovery of the same, or other personal property actually and directly used in connection therewith, or the value of the same, or for damages alleged to arise by reason of the seizing and destruction thereof, and, on conviction, judgment shall be entered directing that containers or other

receptacles hereinbefore mentioned, and other personal property actually and directly used in connection with the said violation, shall be ordered sold by the court at public sale on ten days' notice and the proceeds paid into the school fund as in case of fines and forfeitures.''

The first part of section 42 continues the same subject, and provides that, if no one is found in possession, the officer ''shall post in a conspicuous place on the building or premises a copy of his warrant, and take possession of the liquors and the containers or vessels containing the same, and other personal property used in connection therewith.'' If no one appears at the hearing, or if any one appears and is found guilty, the ''liquors, containers and vessels mentioned hereinbefore shall be immediately destroyed.''

The remainder of section 42 deals with transportation of liquors: ''Any car, automobile, vehicle or means of transportation which shall be engaged in, or used for, the unlawful transportation of intoxicating liquors is hereby declared a common nuisance and may be abated as in this act provided. Any peace officer having probable cause to believe that such vehicle is being used for the unlawful transportation of intoxicating liquors, shall make search thereof with or without a warrant, and in every case where a search is made without a warrant the officer shall take the vehicle and the persons in charge thereof into custody and forthwith shall file a complaint and a warrant shall issue and the case thereafter shall proceed in all respects as is provided in this and the preceding sections.''

The procedure in ''this and the preceding sections'' is not in all respects the same, and this presents one of the difficulties in ascertaining the meaning of the legislature.

The provision in regard to unlawful transportation of liquors is very brief. The intention of the legislature as to the liability to forfeiture, and manner of en-

forcing that liability, must be derived from its reference to "preceding sections."

The fact that the provision as to the seizure of liquors and any other personal property actually and directly used in connection therewith and the provision as to transportation of liquors are found in the same section is an indication that the procedure is to be the same in both. But the force of this suggestion is weakened by the fact that there are inconsistent provisions for the disposition of the articles seized in connection with the liquors kept unlawfully where no nuisance is declared. In one place they are required to be sold and the proceeds paid into the school fund, and in another place the provision is that such articles shall be "immediately destroyed."

An automobile used in the unlawful transportation of liquors is declared to be "a common nuisance and may be abated as in this act provided." That part of the act that provides specifically how a nuisance is to be abated is section 28 and the following sections relating to the buildings or places where liquors are kept for sale or for some unlawful purpose, etc. Section 29 provides: "Whenever a nuisance is kept, maintained or exists, as defined in this act," proceedings shall be begun in equity, as was done in this case. And section 32 provides how a nuisance shall be abated: "If the existence of a nuisance be established in an action as provided in this act, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case, * * * and shall direct that all intoxicating liquors and the receptacles in which said liquors are kept with unlawful intent shall be seized and held subject to the order of the court. * * * For removing and selling movable property, the officer shall be entitled to charge and receive the same fees as he would for levying upon and selling property on execution." The next section (section 33) provides: "The proceeds of the sale of the personal

property, as provided in the preceding section, shall be applied in payment of the costs of the action and abatement, and the balance, if any, shall be paid to the defendant."

These provisions for disposing of personal property found in buildings which are condemned because intoxicating liquors are unlawfully sold or disposed of therein, and the provisions in regard to the unlawful transportation of such liquors, are the only provisions declaring a nuisance and providing how it shall be abated. The bars, counters, furniture and like property are apparently considered of too much importance and value to be forfeited to the state, as are the "containers or vessels containing the same, and other personal property used in connection" with the liquors unlawfully kept, when the building and more valuable articles are not condemned. That is, if no unlawful trade or business is carried on in the place where the liquors are kept, the containers and other articles in which the liquors are stored are of comparatively little value, and are at once forfeited; but in running a secret saloon, or trade in liquors, the building and furniture, being of more consequence, are declared to be a nuisance, and the abatement is more formal and the values differently disposed of. An automobile or car may (as in this case) be of more value than some buildings so used, and it is not unreasonable to treat such property accordingly. In such case, the owner, which would include a mortgagee, is not to have his property rights affected by the proceedings, except as stated in connection with the abatement of a nuisance under the act. "If the owner appears and pays all costs of the proceedings and files a bond with sureties to be approved by the clerk of the district court in an amount to be ascertained by the court, or, in vacation by the judge or clerk of the court, conditioned that he will immediately abate said nuisance," it may release the building, if a building is involved in the proceedings,

but "the release of the property under the provisions of this section shall not release it from any judgment, lien, penalty or liability to which it may be subject by law." Section 34. When a nuisance is abated under the act, the penalty or liability to which personal property is subject is plainly specified in sections 32 and 33.

The statute provides for making chattel mortgages a matter of public record, and contemplates that, when properly executed and filed for record, subsequent interests acquired therein shall be subject to the mortgagee's lien. If the forfeiture of the property extends under all circumstances to the mortgagee's title, then this statute is so far a modification of the chattel mortgage statute. If it was intended to forfeit the interest of an innocent mortgagee, instead of declaring the automobile a nuisance and subjecting it only to the cost of abatement, as in other cases of property of such value, it seems probable that the chattel mortgage statute would have been mentioned and some further provision made with reference thereto. Some provision might have been inserted requiring the mortgagee to take certain specified precautions against the use of the property in violation of the act, or providing a severe penalty for using mortgaged property for such purposes without the knowledge of the mortgagee, or some similar additional provision.

Construing the statute as a whole, we cannot find that the legislature considered that it was necessary to forfeit the property of an innocent party, in the amount of $2,350, for the "preservation of the public peace, health and safety."

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

MORRISSEY, C. J., and LETTON, J., not sitting.

ALDRICH, J., dissenting.

This opinion lays great stress about the courts not favoring forfeiture. That is true; but there is not an instance on record in a case like the one at bar where the question of police regulation is the issue, when it views with disfavor this general provision of police power and forfeiture. Courts do not under any circumstances for a moment stop to parley or listen to the technicalities of the casualist when the issue is to stop pestilence and famine, and to promote good health and to prevent contagious disease. Under such circumstances the doctrine of forfeiture is not out of place, or a mere empty jargon, and to object to it, in a case like the one at bar, is a subterfuge which repeals a statute enacted in behalf of good health and good morals.

When property is employed in a business that is productive of crime and debauchery, it is subject to this despised doctrine of forfeiture. This is the policy recognized and pursued by our federal government in its revenue laws and in all of its operations against nuisances, such as the illicit traffic in liquor. 22 Cyc. 1643. The law for controlling the distillery, for frauds, is constitutional. *United States v. McKinley*, 4 Brewst. (Pa.) 246; *United States v. Distillery*, 25 Fed. Cas. 866, No. 14965. Also it is federal law as well that forfeiture of spirits at a distillery fraudulently operated extends to the interest of the mortgagee, although ignorant of the frauds. 22 Cyc. 1644, and *United States v. Seven Barrels of Distilled Oil*, 27 Fed. Cas. 1025, No. 16253.

When this majority opinion railed at the policy of forfeiture resorted to by the government, it simply is criticising a policy adopted by our government more than a century ago, and adopted also by every state in the Union to promote better morals, better health, and to keep in check the lawless element in every community in this entire country. This same policy, so

long having the approval of our federal government,
has been adopted by the state government of Nebraska,
and to interfere with it in a situation like the case at
bar is certainly bad public policy, for it turns the
automobile loose upon every community in this state to
be an instrument of law breakers, as is desired in the
illicit traffic of liquor. This places a premium upon
lawlessness. Better protect morals and health than an
automobile dealer who is selling his machine on credit to
criminals as an agency to debauch and promulgate
crime.

This Nebraska statute, as found in chapter 187, Laws
1917, is declared to be for the immediate preservation
of public peace, health and safety. Thus this chapter
is brought squarely under the head of police regula-
tion, and was enacted for the purpose of aiding and
abetting that feature of the law in this state; and
for one to interpret the object and purpose of this law
so as to make it nugatory and to abort legislative in-
tent is assuming a responsibility which the court
surely ought to hesitate to do. The general purpose,
aim and object of this chapter 187 is a mathematical
demonstration of the lofty purpose of legislative intent,
and the despised doctrine of forfeiture is the govern-
ment agency usually employed in cases of this kind
to protect society, to promote good morals and general
sobriety everywhere. In a situation like the case at
bar, to hide behind forfeiture and refuse to give the
legislature an honest and intelligent intent is to defy
decency, to aid and abet lawbreakers, and to open wide
the doors to bootleggers, and to put a premium upon
lawlessness everywhere, and trample under foot the in-
tention of the legislature that enacted a law in good
faith intended to make a general nuisance out of an
automobile when used in unlawful transportation of
liquor.

The opinion argues that, to take this automobile and
confiscate it, and thus deprive an innocent mortgagee

of his holdings, is wrong and should not have the sanc-
tion of the courts. The enactment of this liquor statute
in Nebraska, which provides for declaring an automobile
engaged in the illicit traffic of liquor as being a nuisance,
and for confiscating and selling it, the proceeds of the
sale to be used in first paying costs, and the remainder
turned into the school fund, has the approval of federal
law, as the revenue policy of the United States demon-
strates. This is an action in a sense *in rem* and pro-
ceeds against the automobile, declaring it a public
nuisance, and abates it by ordering it sold. This pro-
ceeding is not against the defendant personally, but to
determine the ownership of the automobile for the
purpose of giving a good title, when the state sells it,
to abate a nuisance, and to promote good health and
morals.

It is a policy of civil government to protect society
against the lecherous, criminal influence of the outlaw
liquor traffic, and the state of Nebraska, proceeding
along statutory lines to do this, should not, in our
opinion, be molested ·or prevented from so doing. It
seems· to us this majority opinion should have taken
into consideration such cases as are found in *United
States v. One Black Horse,* 129 Fed. 167. This is a
case where a horse and buggy was hired by a liveryman
to a man who used them in smuggling liquor across a
state line, and just as in the case at bar, without the
knowledge of the mortgagee, and also in that case, as
in the case at bar, the issue was to evade the law under
sanction of the courts, and afford protection to the
innocent mortgagee, but in that case, as in this one, the
court ought to have said: ''The redress of the innocent
claimant (as in the case of the innocent mortgagee) is
from the wrongdoer himself or by application to the
officers of the government usually vested with authority
to remit forfeiture.'' *United States v. Two Bay Mules,*
36 Fed. 84; 22 Cyc. 1681. This wrongdoer had a credit
of $2,350 to buy an automobile to transport liquor from

a wet into a dry state, so these defendants were not without protection.

Viewed in the light of federal and state authority, the legal conclusion of all this is that the unlawful acts of the owner of this automobile finds the mortgagee, the defendant herein, just the same as if he had committed the crime himself. *Dobbins Distillery v. United States*, 96 U. S. 395.

Courts have said: "Every owner of property holds title thereto subject to the authority of the state to so regulate its use and enjoyment as to prevent and abate public nuisances, and the enforcement of that authority works no legal wrong." *City of Waterloo v. Waterloo, C. F. & N. R. Co.*, 149 Ia. 129.

When an automobile is used illegally to transport liquor from wet into dry territory, it is a violation, not only of state law, but is in defiance of federal statute, and this majority opinion refuses, not only to give effect to this state law, but turns down federal law upon this same subject and enacted for the same purpose that this law, found in chapter 187, Laws 1917, was enacted to protect health and good morals. It seems to us that it is the duty of this court to recognize this federal law and not turn it down on some technical construction. *Mugler v. Kansas*, 123 U. S. 623; *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650.

In the interpretation of the provisions of the statute, a court should take them to mean what they say, and that the legislature intended to say what it did. If in making an interpretation we find the law susceptible of two meanings, one which carries out what the law was enacted to cure, and the other which makes the law inadequate to do what was desired to be accomplished, then the rule is to give it the meaning that accomplishes the original purpose. "The fallacy of the argument lies in part in disregarding the distinction between a proceeding to abate a nuisance, which looks

only to the property that in the use made of it constitutes the nuisance, and a proceeding to punish an offender for the crime of maintaining a nuisance. These two proceedings are entirely unlike. The latter is conducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by the rules which relate to property, and its only connection with persons is through the property in which they may be interested. That which is declared by a valid statute to be a nuisance is deemed in law to be a nuisance in fact, and should be dealt with as such. The people, speaking through their representatives, have proclaimed it to be offensive and injurious to the public, and the law will not tolerate it. The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate the nuisance." *Carleton v. Rugg*, 149 Mass. 550.

These two proceedings are entirely unlike. We have had many statutes enacted in the name of police regulation. Among the many prominent and recent ones, we find an apt discussion of this court in *State v. Fanning*, 97 Neb. 224, and it is especially in point because it is written by the author of the opinion from which we are dissenting. The provisions of our prohibition law declaring automobiles a nuisance when used in the transportation of liquor are not unlike our game law, which provides for the forfeiture of fish nets and their destruction. It certainly is unfortunate for the people of Nebraska that the author of the opinion in *State v. Fanning, supra*, did not have the same light and the same inspiration when he wrote the opinion in the *State of Nebraska v. Jones-Hansen Cadillac Co.*

We do not care to pursue this matter further, believing that we have pointed out the fallacy of the majority opinion and the errors adopted, and that the legislature still has time to pass a law that will soon remedy the errors of this majority opinion. We be-

lieve it is erroneous and contrary to law, and is plainly wrong from the standpoint of public policy. Wrong, because it gives the wrong construction to legislative intent, and further wrong because it is in square conflict with the United States statute upon the same subject and enacted for the same purpose, and therefore is against the policy of the federal government and of good morals; and we feel it incumbent upon us to do our little bit in pointing out the errors we believe the court has fallen into. This opinion from the standpoint of law, good morals, history, fact, and precedent should have upheld Cass county and the state of Nebraska.

We now face this situation in enforcing the liquor law. The owner of an automobile can use his machine to transport liquor into Nebraska with impunity. All he has to do is to have some one of his gang produce a chattel mortgage, and under the authority of the Nebraska supreme court this selfsame mortgagee can claim his machine while it is being used to transport liquor in violation of law. And because of this situation, and because when an automobile is so used it is a nuisance and should be abated as the statute provides by invoking the law of forfeiture, for these reasons, and for other points in this dissenting opinion, I cannot concur in the opinion as adopted.